WILSON TURNER KOSMO LLP
FREDERICK W. KOSMO, JR. (138036)
HUBERT KIM (204957)
550 West C Street, Suite 1050
San Diego, California 92101
Telephone: (619) 236-9600
Facsimile: (619) 236-9669
E-mail: fkosmo@wilsonturnerkosmo.com
E-mail: hkim@wilsonturnerkosmo.com

Attorneys for Plaintiff
NATURAL ALTERNATIVES
INTERNATIONAL, INC.

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATURAL ALTERNATIVES INTERNATIONAL, INC.,<br><br>Plaintiff,<br><br>v.<br><br>CREATIVE COMPOUNDS, LLC, and DOES 1-100,<br><br>Defendant. | Case No. '16CV2146 GPC JMA<br><br>**COMPLAINT FOR PATENT INFRINGEMENT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff, Natural Alternatives International, Inc. ("NAI") hereby brings this Complaint for patent infringement against Defendant, Creative Compounds, LLC ("Creative"), and alleges as follows:

**INTRODUCTION**

1. NAI sells its branded CarnoSyn® beta-alanine, an amino acid, to customers throughout the United States and in other countries. NAI's product is covered by a robust portfolio of patent and trademark rights. Creative imports, offers for sale, and sells generic beta-alanine. In September 2015, Creative sent a Blast Email to customers and potential customers of beta-alanine that induced infringement of NAI's patent rights. Creative has offered for sale and sold beta-alanine to contract

manufacturers and brands using beta-alanine as an ingredient in infringing dietary supplements products.

## PARTIES

2. NAI is a Delaware corporation with its principal place of business in San Marcos, California.

3. Creative is a Nevada limited liability corporation with its principal place of business located at 600 Daugherty, Scott City, Missouri.

4. The true names and capacities, whether individual, corporate, associate or otherwise of defendants sued herein as DOES 1-100, inclusive, are unknown to NAI at the present time and NAI therefore sues such defendants by fictitious names. NAI will amend this complaint, by leave of Court if necessary, to show such true names and capacities when the same have been ascertained. Such defendants will include contract manufacturers that buy beta-alanine from Creative and then use it to manufacture dietary supplements for brands, the brands that either buy manufactured products from contract manufacturers and then sell the finished products to end users, or buy beta-alanine from Creative, use it to manufacture dietary supplements for sale to end users, and/or the end users.

## JURISDICTION AND VENUE

5. The Court has subject matter jurisdiction over the underlying action pursuant to 28 U.S.C. §§ 1331 and 1338 because this is an action for patent infringement arising from Title 35 of the United States Code, 35 U.S.C. §§ 1, *et seq.*

6. The exercise of jurisdiction over Creative comports with the laws of the State of California and the constitutional requirements of due process because Creative transacts business and/or offers to transact business within California. Creative offers its products and services for sale to and use by citizens of California. In another case pending in this Court, *Natural Alternatives International, Inc. v. Creative Compounds*, No. 3:15-cv-02081-JM-RBB, Creative admitted that personal jurisdiction in California was proper. Creative had been registered to do business in

California and has filed litigation in the U.S. District Court for the Central and Southern Districts of California. Further, it has sent one or more communications at issue to recipients in this State. Creative has had communications with at least one NAI customer located in California regarding Creative's generic beta-alanine product. Creative has imported beta-alanine into at least one California port. *See, e.g.*, Ex. 1. Creative also maintains an interactive website through which residents of California and other states can communicate with the company.

7. Venue is proper in this District under 28 U.S.C. § 1391.

## FACTS

**A. NAI**

8. NAI, a publicly traded company, is a leading formulator, manufacturer, marketer and supplier of nutritional supplements and provides strategic partnering services to its customers. NAI offers a wide range of innovative nutritional products and services to its clients including: scientific research, clinical studies, proprietary ingredients, customer-specific nutritional product formulation, product testing and evaluation, marketing management and support, packaging and delivery system design, regulatory review and international product registration assistance. NAI also funds, sponsors, directs and participates in research studies to establish consumer benefits and scientific efficacy supporting both product claims and marketing initiatives. The comprehensive services NAI offers and financial support for research have established NAI as an innovator in the field of nutritional science and increased the goodwill associated with NAI-authorized products.

9. NAI owns 34 patents in the United States and foreign countries related to beta-alanine. Beta-alanine is a non-essential amino acid. In numerous scientific studies, CarnoSyn® beta-alanine, when used as a dietary supplement, has been proven to delay the onset of fatigue in muscle cells, thereby eliminating muscle fatigue and soreness and has been shown to improve athletic performance. One of the inventors of the patents assigned to NAI, Dr. Roger Harris, has been recognized for his work in

-3- Case No. _____
COMPLAINT FOR PATENT INFRINGEMENT

nutritional supplements, particularly his work in several studies using CarnoSyn® beta-alanine. He has a lifetime achievement award from the International Society of Sports Nutrition. NAI sells beta-alanine to customers in the United States engaged in interstate and foreign commerce. Its beta-alanine is branded and sold under the trademark CarnoSyn® and NAI also owns the entire right, title and interest to multiple trademarks used in its beta-alanine business.

10. NAI has invested and continues to expend substantial funds to build, expand and promote sales of CarnoSyn® beta-alanine. NAI pursues legal avenues to protect its CarnoSyn® brand and intellectual property portfolio.

11. NAI maintains a website to promote and encourage sales of its branded beta-alanine at www.carnosyn.com, the content of which is incorporated herein by reference. In 2015 and 2016, NAI has attended and will attend trade shows and conferences to promote CarnoSyn® beta-alanine, including the Olympia Fitness & Performance Weekend and Supply Side West.

12. When NAI sells CarnoSyn® beta-alanine to customers, the customers receive a scientifically-tested recognized product, a license to NAI's trademarks and patents, and are indemnified against product liability. The license extends only to the CarnoSyn® beta-alanine purchased from NAI, and does not extend to CarnoSyn® beta-alanine that contains or is mixed or comingled with any non-trademarked beta-alanine.

13. By statute, NAI's 14 U.S. patents are presumed valid. 35 U.S.C. § 282. None of those patents have been held invalid by a court. The patents issued to NAI are listed at http://www.carnosyn.com/patents, incorporated herein by reference.

14. NAI is the owner of U.S. Patent No. 7,825,084 ("the '084 patent"), issued on or about November 2, 2010, entitled "Methods and compositions for increasing the anaerobic working capacity in tissues." A copy of the '084 patent is attached as Ex. 2 and incorporated by reference.

**B.     Creative Compounds**

15.     Creative is a global importer, supplier and distributor of raw ingredients to customers in the nutritional supplement, food, and beverage industries.

16.     Creative supplies beta-alanine to nutritional supplement contract manufacturers, formulators and distributors in the United States.  Creative owns, maintains and/or operates a website at www.creativecompounds.com, the content of which is incorporated herein by reference.

17.     Creative began importing beta-alanine into the United States as early as 2007.  *See, e.g.*, Ex. 1.  NAI and Creative are direct competitors in the market for beta-alanine in the United States.

18.     Creative has offered to sell or sold and continues to offer to sell and sell non-branded beta-alanine to dietary supplement manufacturers and customers in the United States in interstate commerce.  For example, on July 2, 2015, Creative sent an email to a contract manufacturer and NAI licensee, offering to sell it beta-alanine. *See, e.g.*, Ex. 3.

19.     Customers of Creative's generic beta-alanine receive a product that is not covered by any NAI patent or trademark license.

20.     Prior to September 2015, Creative knew about NAI's patents.

21.     In or about September 2015, Creative sent a widely distributed Blast Email to the market that included customers and competitors of NAI, including customers that purchased or potentially would purchase beta-alanine from NAI.

22.     The Blast Email stated the following:

> If you or your customers have previously requested or required the trademarked Beta Alanine, we would like you to know that Creative Compounds is now offering Beta Alanine for sale at a significant cost savings versus our competitors.  In the past, others have avoided selling Beta Alanine and prices have been kept high by patents owned by Natural Alternatives International, Inc. ("NAI").

-5-        Case No. _____
COMPLAINT FOR PATENT INFRINGEMENT

> We have reviewed ten patents owned by NAI and have discovered that NAI appears to have admitted that three of the patents are invalid, as construed by a court in Delaware in 2011. NAI has never again sued another party on these three patents after the Delaware case.
>
> NAI has also sued Woodbolt Distribution in Texas for infringement of three other patents. However, Woodbolt filed for reexamination of two of the NAI patents initially involved in the suit, and patent examiner has held that the claims that cover Beta Alanine compositions in those patents (as opposed to claims covering methods of using Beta Alanine) are invalid. NAI has appealed, but in order to succeed, NAI will have to prove that each of multiple alternative bases for invalidity reached by the patent examiner are incorrect.
>
> We have reviewed this issue in depth and are confident enough in our conclusions to begin sourcing Beta Alanine. If you have any questions, or would like to realize a significant cost savings on Beta Alanine by sourcing it from Creative, please contact me at your earliest convenience.

*See, e.g.*, Ex. 4. As a follow-up to the Blast Email and to induce purchases, Creative sent unsolicited samples of its generic beta-alanine product. *See, e.g.*, Ex. 5.

23. Creative made its statements to the market for the purpose of influencing purchasing decisions. Creative's Blast Email represented that U.S. customers for beta-alanine could purchase infringing beta-alanine from Creative because NAI's patents were invalid. Customers were likely aware of the statements and influenced by them to buy Creative's beta-alanine instead of NAI's CarnoSyn® beta-alanine.

24. Creative's Blast Email induced others to infringe NAI's patents, including the patents-in-suit. Contract manufacturers and/or brands have purchased beta-alanine from Creative for use in dietary supplements that infringe one or more claims of NAI's patents. Creative made the statements in the email with the intent to

actively induce others to infringe NAI's valid patent rights. Creative knew that the use of beta-alanine obtained from Creative by contract manufacturers and brands for use in the manufacture and sale of dietary supplements would constitute induced infringement of the patents-in-suit. The offer for sale and sale of Creative's accused products induce infringement of at least claim 1 of the '084 patent.

25. Creative has also contributorily infringed NAI's patent rights, at least claim 1 of the '084 patent. Creative, through the Blast Email, offered to sell, and did subsequently sell, beta-alanine for use in dietary supplements that would infringe NAI's patents-in-suit. Creative knew that the beta-alanine being sold was especially adapted for use in the infringement of NAI's patents and was not a staple article or commodity that was suitable for non-infringing use. The beta-alanine purchased by Creative's customers was especially adapted for use in dietary supplements, and therefore, to infringe NAI's patents, and it does not have any substantial non-infringing use, which Creative knew when it sent the Blast Email and sold the beta-alanine.

26. Discovery will identify sales made by Creative to one or more contract manufacturers, which make dietary supplements containing beta-alanine for one or more brand companies. By using beta-alanine obtained from Creative for the manufacture of dietary supplements, the contract manufacturer is infringing NAI's patent rights, for which it does not have a license. Further, a brand that makes or has made a dietary supplement product using unlicensed beta-alanine from Creative also infringes one or more claims of the patent-in-suit when it makes representations to the public such as delaying the onset of fatigue or that beta-alanine is an amino acid essential for the synthesis of muscle carnosine, which acts as a buffer, delaying the onset of muscle fatigue.

## Count I

### (Patent Infringement)

27. The foregoing allegations are incorporated by reference.

28. Creative has, through the sale of beta-alanine and statements made in the Blast Email, induced others (*i.e.*, contract manufacturers, brands and the end users of the brand's dietary supplement products, named herein as fictitious named DOE defendants) to infringe literally or under the doctrine of equivalents, one or more claims of the '084 patent, and will continue to do so unless enjoined therefrom.

29. Creative has, through the sale of beta-alanine and statements made in the Blast Email, contributed to the infringement literally or under the doctrine of equivalents, of one or more claims of the '084 patent.

30. Creative's infringement has been willful.

31. NAI has been irreparably harmed by Creative's acts of infringement and has suffered damages in an amount to be determined at trial.

## **REQUEST FOR RELIEF**

NAI respectfully requests that this Court enter judgment against Creative and that the following relief be granted:

a. judgment that Creative has infringed one or more claims of the '084 patent;

b. judgment that Creative's infringement of one or more claims of the '084 patent has been willful;

c. preliminary injunction and injunction against continued infringement (35 U.S.C. § 283);

d. damages for past infringement (35 U.S.C. § 284);

e. imposition of a constructive trust on all proceeds from the sale of accused products;

f. increased and treble damages for willful infringement (35 U.S.C. § 284);

g. attorneys' fees as allowed by law, including without limitation, 35 U.S.C. § 285;

h. costs pursuant to Fed. R. Civ. P. 54(d) or as otherwise provided by law; and

     i.     such other relief as the Court deems just and appropriate under the circumstances.

## JURY DEMAND

NAI hereby demands a jury trial on all issues so triable.

Dated:     August 24. 2016            **WILSON TURNER KOSMO LLP**

                                               By:    s/ Frederick W. Kosmo, Jr.
                                                              FREDERICK W. KOSMO, JR.
                                                              fkosmo@wilsonturnerkosmo.com

                                                              Attorney for Plaintiff
                                                              NATURAL ALTERNATIVES
                                                              INTERNATIONAL. INC.

**Of Counsel:**
Richard J. Oparil
W. John McKeague
Caroline M. Maxell
Porzio, Bromberg & Newman, P.C.
1200 New Hampshire Ave. NW, Suite 710
Washington, DC 20036
(202) 517-1888
(202) 517-6322 (fax)

-9-       Case No. _____

COMPLAINT FOR PATENT INFRINGEMENT

# TABLE OF CONTENTS

| EX. NO. | DESCRIPTION | PAGES |
|---|---|---|
| 1 | Import Bill of Lading Detail re Creative Compounds LLC | 11-16 |
| 2 | U.S. Patent No. 7,825,084 | 17-51 |
| 3 | July 2, 2015 email from Julie Weldon of Creative Compounds to Manav Shah | 52-53 |
| 4 | September 1, 2015 email from Julie Weldon of Creative Compounds to Manav Shah | 54-55 |
| 5 | September 10, 2015 email from Julie Weldon of Creative Compounds to Manav Shah | 56-60 |