WILSON TURNER KOSMO LLP
FREDERICK W. KOSMO, JR. (138036)
HUBERT KIM (204957)
550 West C Street, Suite 1050
San Diego, California 92101
Telephone: (619) 236-9600
Facsimile: (619) 236-9669
E-mail: fkosmo@wilsonturnerkosmo.com
E-mail: hkim@wilsonturnerkosmo.com

Kevin M. Bell (admitted *pro hac vice*)
Richard J. Oparil (admitted *pro hac vice*)
W. John McKeague (admitted *pro hac vice*)
PORZIO, BROMBERG & NEWMAN PC
1200 New Hampshire Ave., NW, Suite 710
Washington, DC 20036
(202) 517-1888
(202) 517-6322 (fax)
kmbell@pbnlaw.com
rjoparil@pbnlaw.com
wjmckeague@pbnlaw.com

Attorneys for Plaintiff
NATURAL ALTERNATIVES
INTERNATIONAL, INC.

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATURAL ALTERNATIVES INTERNATIONAL, INC., <br><br> Plaintiff, <br><br> v. <br><br> CREATIVE COMPOUNDS, LLC, CORE SUPPLEMENT TECHNOLOGIES, INC., HONEY BADGER LLC, MYOPHARMA, INC., and DOES 1-100, <br><br> Defendants. | Case No. 16-cv-02146-H-AGS <br><br> **FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT** <br><br> **DEMAND FOR JURY TRIAL** |

Plaintiff, Natural Alternatives International, Inc. ("NAI") hereby brings this First Amended Complaint for patent infringement against Defendants, Creative Compounds, LLC ("Creative"), Core Supplement Technologies, Inc. ("Core"), Honey Badger LLC ("Honey Badger") and Myopharma, Inc. ("Myopharma"),  and alleges as follows:

## INTRODUCTION

1.    NAI sells its branded CarnoSyn® beta-alanine, an amino acid, to customers throughout the United States and in other countries. NAI's product is covered by a robust portfolio of patent and trademark rights.  Creative imports, offers for sale, and sells generic beta-alanine. In September 2015, Creative sent a Blast Email to customers and potential customers of beta-alanine that induced infringement of NAI's patent rights. Creative has offered for sale and sold beta-alanine to contract manufacturers and brands using beta-alanine as an ingredient in infringing dietary supplements products, including products sold by Myopharma and Honey Badger, which are manufactured by Core.  Dietary supplement products using beta-alanine purchased from Creative also include products sold by Metabolic Nutrition ("Metabolic"), Bionyx Biosciences, Inc. ("Bionyx"), Talos Nutrition ("Talos"), Adaptogenics Labs, LLC ("Adaptogenics"), Fit Foods Ltd ("Fit Foods"), Proccor Pharmaceuticals, Inc. ("Proccor") and Xtreme Pumpz ("Xtreme").

## PARTIES

2.    NAI is a Delaware corporation with its principal place of business in San Marcos, California.

3.    Creative is a Nevada limited liability corporation with its principal place of business located at 600 Daugherty, Scott City, Missouri.

4.    Core is a California corporation with its principal place of business located at 4645 North Avenue, Oceanside, California 92056.

5.    Honey Badger is a Texas corporation with its principal place of business located at 3005 S. Lamar Boulevard, Suite D109 # 145, Austin, Texas 78704.

FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT

6. Myopharma is a California corporation with its principal place of business located at 7940 Silverton Avenue, Suite 103, San Diego, California 92126.

7. The true names and capacities, whether individual, corporate, associate or otherwise of defendants sued herein as DOES 1-100, inclusive, are unknown to NAI at the present time and NAI therefore sues such defendants by fictitious names. NAI will amend this complaint, by leave of Court if necessary, to show such true names and capacities when the same have been ascertained. Such defendants will include contract manufacturers that buy beta-alanine from Creative and then use it to manufacture dietary supplements for brands, the brands that either buy manufactured products from contract manufacturers and then sell the finished products to end users, or buy beta-alanine from Creative, use it to manufacture dietary supplements for sale to end users, and/or the end users.

## JURISDICTION AND VENUE

8. The Court has subject matter jurisdiction over the underlying action pursuant to 28 U.S.C. §§ 1331 and 1338 because this is an action for patent infringement arising from Title 35 of the United States Code, 35 U.S.C. §§ 1, *et seq.*

9. The exercise of jurisdiction over Creative comports with the laws of the State of California and the constitutional requirements of due process because Creative transacts business and/or offers to transact business within California. Creative offers its products and services for sale to and use by citizens of California. In another case pending in this Court, *Natural Alternatives International, Inc. v. Creative Compounds*, No. 3:15-cv-02081-JM-RBB, Creative admitted that personal jurisdiction in California was proper. Creative had been registered to do business in California and has filed litigation in the U.S. District Court for the Central and Southern Districts of California. Further, it has sent one or more communications at issue to recipients in this State. Creative has had communications with at least one NAI customer located in California regarding Creative's generic beta-alanine product. Creative has imported beta-alanine into at least one California port. *See, e.g.*, Ex. 1.

Creative also maintains an interactive website through which residents of California and other states can communicate with the company.

10. The exercise of jurisdiction over Core comports with the laws of the State of California and the constitutional requirements of due process because Core is a California corporation and transacts business and/or offers to transact business within California. Core also has a license with NAI that states that any action or proceeding arising out of, or relating to the license agreement or any matter that arises out of, or in any matter is related to the relationship between the parties shall only be brought by NAI in the state or federal courts in the County of San Diego and that each of the parties submits to the personal jurisdiction and venue of such court. Ex. 6.

11. The exercise of jurisdiction over Honey Badger comports with the laws of the State of California and the constitutional requirements of due process because Honey Badger transacts business and/or offers to transact business within California. Honey Badger also has a license with NAI that states that any action or proceeding arising out of, or relating to the license agreement or any matter that arises out of, or in any matter is related to the relationship between the parties shall only be brought by NAI in the state or federal courts in the County of San Diego and that each of the parties submits to the personal jurisdiction and venue of such court. Ex. 7.

12. The exercise of jurisdiction over Myopharma comports with the laws of the State of California and the constitutional requirements of due process because Myopharma is a California corporation and transacts business and/or offers to transact business within California. Myopharma also has a license with NAI that states that any action or proceeding arising out of, or relating to the license agreement or any matter that arises out of, or in any matter is related to the relationship between the parties shall only be brought by NAI in the state or federal courts in the County of San Diego and that each of the parties submits to the personal jurisdiction and venue of such court. Ex. 8.

FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT

13.     Venue is proper in this District under 28 U.S.C. § 1391 and the license agreements with Core, Honey Badger and Myopharma.

**FACTS**

**A.     NAI**

14.     NAI, a publicly traded company, is a leading formulator, manufacturer, marketer and supplier of nutritional supplements and provides strategic partnering services to its customers.  NAI offers a wide range of innovative nutritional products and services to its clients including:  scientific research, clinical studies, proprietary ingredients, customer-specific nutritional product formulation, product testing and evaluation, marketing management and support, packaging and delivery system design, regulatory review and international product registration assistance. NAI also funds, sponsors, directs and participates in research studies to establish consumer benefits and scientific efficacy supporting both product claims and marketing initiatives.  The comprehensive services NAI offers and financial support for research have established NAI as an innovator in the field of nutritional science and increased the goodwill associated with NAI-authorized products.

15.     NAI owns 46 patents in the United States and foreign countries related to beta-alanine. Beta-alanine is a non-essential amino acid. In numerous scientific studies, CarnoSyn® beta-alanine, when used as a dietary supplement, has been proven to delay the onset of fatigue in muscle cells, thereby eliminating muscle fatigue and soreness and has been shown to improve athletic performance. One of the inventors of the patents assigned to NAI, Dr. Roger Harris, has been recognized for his work in nutritional supplements, particularly his work in several studies using CarnoSyn® beta-alanine. He has a lifetime achievement award from the International Society of Sports Nutrition.  NAI sells beta-alanine to customers in the United States engaged in interstate and foreign commerce. Its beta-alanine is branded and sold under the trademark CarnoSyn® and NAI also owns the entire right, title and interest to multiple trademarks used in its beta-alanine business, including the CarnoSyn® trademark,

FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT

Serial No. 78372235 and Registration No. 3146289, a true and correct copy of which is attached as Ex. 9 and the Carnosyn Beta Alanine® trademark, Serial No. 85606462 and Registration No. 4271217 a true and correct copy of which is attached as Ex. 10

16.     NAI has invested and continues to expend substantial funds to build, expand and promote  sales of CarnoSyn® beta-alanine.  NAI pursues legal avenues to protect its CarnoSyn® brand and intellectual property portfolio.

17.     NAI maintains a website to promote and encourage sales of its branded beta-alanine at www.carnosyn.com, the content of which is incorporated herein by reference. In 2015 and 2016, NAI has attended trade shows and conferences to promote CarnoSyn® beta-alanine, including the Olympia Fitness & Performance Weekend and Supply Side West.

18.     When NAI sells CarnoSyn® beta-alanine to customers, the customers receive a scientifically-tested recognized product, a license to NAI's trademarks and patents, and are indemnified against product liability.  The license extends only to the CarnoSyn® beta-alanine purchased from NAI, and does not extend to CarnoSyn® beta-alanine that contains or is mixed or comingled with any non-trademarked beta-alanine.

19.     By statute, NAI's 14 U.S. patents are presumed valid.  35 U.S.C. § 282. None of those patents have been held invalid by a court.  The patents issued to NAI are listed at http://www.carnosyn.com/patents, incorporated herein by reference.

20.     NAI is the owner of U.S. Patent No. 7,825,084 ("the '084 patent"), issued on or about November 2, 2010, entitled "Methods and compositions for increasing the anaerobic working capacity in tissues."  A copy of the '084 patent is attached as Ex. 2 and incorporated by reference.

21.     NAI is the owner of U.S. Patent No. 5,965,596 ("the '596 patent"), issued on or about October 12, 1999, entitled "Methods and compositions for increasing the anaerobic working in tissues."  A copy of the '596 patent is attached as Ex. 11 and incorporated by reference.

FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT

22.     NAI is the owner of U.S. Patent No. 7,504,376 ("the '376 patent"), issued on or about March 17, 2009, entitled "Methods and compositions for increasing the anaerobic working capacity in tissues." A copy of the '376 patent is attached as Ex. 12 and incorporated by reference.

23.     NAI is the owner of U.S. Patent No. 8,993,610 ("the '610 patent"), issued on or about March 31, 2015, entitled "Methods and compositions for increasing the anaerobic working capacity in tissues." A copy of the '610 patent is attached as Ex. 13 and incorporated by reference.

24.     NAI is the owner of U.S. Patent No. 8,470,865 ("the '865 patent"), issued on or about March 31, 2015, entitled "Methods and compositions for increasing the anaerobic working capacity in tissues." A copy of the '865 patent is attached as Ex. 14 and incorporated by reference.

25.     Claim 1 of the '084 patent is directed to a human dietary supplement comprising beta-alanine in a unit dosage of between 0.4 grams to 16 grams.

26.     Claim 1 of the '596 patent is directed to a method of regulating the hydronium ion concentration in human tissue by providing an amount of beta-alanine to the blood or blood plasma effective to increase beta-alanylhistidine dipeptide (carnosine) synthesis in the human tissue, exposing the human tissue to the blood or blood plasma and thereby increasing the carnosine in the human tissue.

27.     Claim 1 of the '376 patent is directed to a composition comprising glycine and an amino acid selected from the group of beta-alanine, an ester of beta-alanine and an amide of beta-alanine, or a composition comprising glycine and a dipeptide selected from the group of a beta-alanine dipeptide and a beta-alanylhistidine di-peptide.

28.     The '376 patent states that the "glycine may be provided in various forms, for example, alone or in combination with other substances, such as in dietary supplements. Alternatively, glycine can be derived from other sources, such as gelatin." Ex. 12 ('376 patent at col. 6, ll. 8-11).

29.     Claim 5 of the '376 patent depends from claim 1 and further requires the composition of claim 1 to be a dietary supplement or a sports drink.

30.     Claim 6 of the '376 patent depends from claim 5 and further requires that the dietary supplement or sports drink is for humans.

31.     Claim 1 of the '610 patent is directed to a use of beta-alanine in manufacturing a human dietary supplement for oral consumption; supplying the beta-alanine, which is not part of a dipeptide, polypeptide or oligopeptide, as a single ingredient in a manufacturing step of the human dietary supplement or mixing the beta-alanine, which is not part of a dipeptide, polypeptide or oligopeptide, in combination with at least one other ingredient for the manufacture of the human dietary supplement, whereby the manufactured human dietary supplement is for oral consumption of the human dietary supplement in doses over a period of time increases beta-alanylhistidine levels in muscle tissue sufficient to delay the onset of fatigue in the human.

32.     Claim 4 of the '610 patent is directed to the use of claim 1, wherein the beta-alanine is present as the single ingredient for the manufacture of the human dietary supplement.

33.     Claim 5 of the '610 patent is directed to the use of claim 1, wherein the beta-alanine is presented in combination with at least one other ingredient for the manufacture of the human dietary supplement.

34.     Claim 6 of the '610 patent is directed to the use of claim 5, wherein the at least one other ingredient comprises creatine.

35.     Claim 1 of the '865 patent is directed to a method of increasing anaerobic working capacity in a human subject comprising providing to the human subject an amount of the amino acid, beta-alanine that is not part of a dipeptide, polypeptide, or oligopeptide, effective to increase betaalanylhistidine dipeptide, *i.e.*, carnosine, synthesis in a tissue and exposing the tissue to the blood or blood plasma, whereby the

concentration of the betaalanylhistidine dipeptide, *i.e.*, carnosine, in the tissue is increased, wherein the beta-alanine is supplied through a dietary supplement.

**B.    Creative Compounds**

36.    Creative is a global importer, supplier and distributor of raw ingredients to customers in the nutritional supplement, food, and beverage industries.

37.    Creative supplies beta-alanine to nutritional supplement contract manufacturers, formulators and distributors in the United States.  Creative owns, maintains and/or operates a website at www.creativecompounds.com, the content of which is incorporated herein by reference.

38.    Creative began importing beta-alanine into the United States as early as 2007.  *See, e.g.*, Ex. 1.  NAI and Creative are direct competitors in the market for beta-alanine in the United States.

39.    Creative has offered to sell or sold and continues to offer to sell and sell non-branded beta-alanine to dietary supplement manufacturers and customers in the United States in interstate commerce.  For example, on July 2, 2015, Creative sent an email to a contract manufacturer and NAI licensee, offering to sell it beta-alanine. *See, e.g.*, Ex. 3.

40.    Customers of Creative's generic beta-alanine receive a product that is not covered by any NAI patent or trademark license.

41.    Prior to September 2015, Creative knew about NAI's patents.

42.    In or about September 2015, Creative sent a widely distributed Blast Email to the market that included customers and competitors of NAI, including customers that purchased or potentially would purchase beta-alanine from NAI.

43.    The Blast Email stated the following:

If you or your customers have previously requested or required the trademarked Beta Alanine, we would like you to know that Creative Compounds is now offering Beta Alanine for sale at a significant cost savings versus our competitors.  In the past, others have avoided selling

FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT

Beta Alanine and prices have been kept high by patents owned by Natural Alternatives International, Inc. ("NAI").

We have reviewed ten patents owned by NAI and have discovered that NAI appears to have admitted that three of the patents are invalid, as construed by a court in Delaware in 2011. NAI has never again sued another party on these three patents after the Delaware case.

NAI has also sued Woodbolt Distribution in Texas for infringement of three other patents. However, Woodbolt filed for reexamination of two of the NAI patents initially involved in the suit, and patent examiner has held that the claims that cover Beta Alanine compositions in those patents (as opposed to claims covering methods of using Beta Alanine) are invalid. NAI has appealed, but in order to succeed, NAI will have to prove that each of multiple alternative bases for invalidity reached by the patent examiner are incorrect.

We have reviewed this issue in depth and are confident enough in our conclusions to begin sourcing Beta Alanine. If you have any questions, or would like to realize a significant cost savings on Beta Alanine by sourcing it from Creative, please contact me at your earliest convenience.

*See, e.g.*, Ex. 4. As a follow-up to the Blast Email and to induce purchases, Creative sent unsolicited samples of its generic beta-alanine product. *See, e.g.*, Ex. 5.

44. Creative made its statements to the market for the purpose of influencing purchasing decisions. Creative's Blast Email represented that U.S. customers for beta-alanine could purchase infringing beta-alanine from Creative because NAI's patents were invalid. Customers were likely aware of the statements and influenced by them to buy Creative's beta-alanine instead of NAI's CarnoSyn® beta-alanine.

45. Creative's Blast Email induced others to infringe NAI's patents, including the patents-in-suit. Contract manufacturers and/or brands have purchased

beta-alanine from Creative for use in dietary supplements that infringe one or more claims of NAI's patents. Creative made the statements in the email with the intent to actively induce others to infringe NAI's valid patent rights. Creative knew that the use of beta-alanine obtained from Creative by contract manufacturers and brands for use in the manufacture and sale of dietary supplements would constitute induced infringement of the patents-in-suit. The offer for sale and sale of Creative's accused products induce infringement of at least claim 1 of the '084 patent, claim 1 of the '596 patent, claim 1 of the '376 patent, claim 1 of the '865 patent and claim 1 of the '610 patent.

46. Creative has also contributorily infringed NAI's patent rights. Creative, through the Blast Email, offered to sell, and did subsequently sell, beta-alanine for use in dietary supplements that would infringe NAI's patents-in-suit. Creative knew that the beta-alanine being sold was especially adapted for use in the infringement of NAI's patents and was not a staple article or commodity that was suitable for non-infringing use. The beta-alanine purchased by Creative's customers was especially adapted for use in dietary supplements, and therefore, to infringe NAI's patents, and it does not have any substantial non-infringing use, which Creative knew when it sent the Blast Email and sold the beta-alanine. The offer for sale and sale of Creative's accused products contribute to the infringement of at least claim 1 of the '084 patent, claim 1 of the '596 patent, claim 1 of the '376 patent, claim 1 of the '865 patent and claim 1 of the '610 patent.

47. Discovery will identify sales made by Creative to additional contract manufacturers, which make dietary supplements containing beta-alanine for one or more brand companies. By using beta-alanine obtained from Creative for the manufacture of dietary supplements, the contract manufacturer is infringing NAI's patent rights, for which it does not have a license. Further, a brand that makes or has made a dietary supplement product using unlicensed beta-alanine from Creative also infringes one or more claims of the patent-in-suit when it makes representations to the

public such as delaying the onset of fatigue or that beta-alanine is an amino acid essential for the synthesis of muscle carnosine, which acts as a buffer, delaying the onset of muscle fatigue.

### C. Core

48. Core is a contract manufacture to customers in the nutritional supplement, food, and beverage industries.

49. Core entered into a license agreement with NAI on April 22, 2015 in which Core received license rights to NAI's trademarks and patents for the manufacture and sale of dietary supplements containing beta-alanine purchased only from NAI. Ex. 6.

50. The license agreement states that patent and trademark rights are expressly limited to beta-alanine purchased from NAI and shall not extend to beta-alanine that is bought from NAI and is mixed or comingled with beta-alanine obtained from any other source than NAI. *Id*. at ¶ 3.

51. The license agreement also states that the licensee "will not contest or aid others in contesting the validity, enforceability or NAI's ownership of and/or rights in the Patent Rights and Trademark Rights." *Id*. at ¶ 5.

52. The license agreement also states that the licensee represents and warrants that the dietary supplements it makes under the license agreement "will comply with the terms of this Agreement including, without limitation, the product labeling requirements." *Id*. at ¶ 7.

53. The license agreement also states that "[i]f any legal proceeding is brought for the enforcement of this Agreement, or because of an alleged breach, default or misrepresentation in connection with any provision of this Agreement or other dispute concerning this Agreement, the successful or prevailing party shall be entitled to recover reasonable attorneys' fees incurred in connection with such legal proceeding." *Id*. at ¶ 11.

FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT

54. The license agreement also states that the licensee "acknowledges and agrees that any actual or threatened breach of this Agreement by it will constitute immediate and irreparable harm to NAI for which monetary damages would be an inadequate remedy and that injunctive relief is an appropriate remedy for such breach. *Id.*

55. Core purchased beta-alanine from Creative. Ex. 16.

56. Core has represented to NAI that the only entities for which it makes manufactures dietary supplements containing beta-alanine are Honey Badger and Myopharma.

57. By using beta-alanine obtained from Creative for the manufacture of dietary supplements for Honey Badger and Myopharma, Core is infringing NAI's patent rights, for which it does not have a license.

58. By making the Performance Energy product for Honey Badger, which contains 1600mg of beta-alanine per serving, Core is infringing at least claim 1 of the '084 patent.

59. By making the Performance Energy product for Honey Badger, which contains beta-alanine and delays the onset of fatigue, Core is infringing at least claim 1 of the '610 patent.

60. By making the MyoPeak product for Myopharma, which contains 1200 mg of beta-alanine per serving, Core is infringing at least claim 1 of the '084 patent.

61. By making the MyoPeak product for Myopharma, which contains beta-alanine and delays the onset of fatigue, Core is infringing at least claim 1 of the '610 patent.

**D. Honey Badger**

62. Honey Badger is a formulator and seller of nutritional supplements, including nutritional supplements containing beta-alanine. Ex. 17 (Honey Badger website).

63. Honey Badger owns and operates a website at https://drinkhoneybadger.com, the contents of which are incorporated by reference.

64. Honey Badger entered into a license agreement with NAI on May 19, 2015 in which Honey Badger received license rights to NAI's trademarks and patents for the manufacture and sale of dietary supplements containing beta-alanine purchased only from NAI. Ex. 7.

65. The license agreement states that patent and trademark rights are expressly limited to beta-alanine purchased from NAI and shall not extend to beta-alanine that is bought from NAI and is mixed or comingled with beta-alanine obtained from any other source than NAI. *Id*. at ¶ 3.

66. The license agreement also states that the licensee "will not contest or aid others in contesting the validity, enforceability or NAI's ownership of and/or rights in the Patent Rights and Trademark Rights." *Id*. at ¶ 5.

67. The license agreement also states that the licensee represents and warrants that the dietary supplements it makes and sells under the license agreement "will comply with the terms of this Agreement including, without limitation, the product labeling requirements." *Id*. at ¶ 7.

68. The license agreement also states that "[i]f any legal proceeding is brought for the enforcement of this Agreement, or because of an alleged breach, default or misrepresentation in connection with any provision of this Agreement or other dispute concerning this Agreement, the successful or prevailing party shall be entitled to recover reasonable attorneys' fees incurred in connection with such legal proceeding." *Id*. at ¶ 11.

69. The license agreement also states that the licensee "acknowledges and agrees that any actual or threatened breach of this Agreement by it will constitute immediate and irreparable harm to NAI for which monetary damages would be an inadequate remedy and that injunctive relief is an appropriate remedy for such breach." *Id*.

FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT

70. Honey Badger has represented to NAI that the only entity that makes dietary supplements for it, which contain beta-alanine, is Core.

71. On or about January 8, 2016, Core purchased 1000 kilograms of beta-alanine from Creative. Ex. 16.

72. Honey Badger sells a product "Performance Energy" which contains beta-alanine. Ex. 18.

73. The Performance Energy product contains 1600mg of beta-alanine per serving. *Id.*

74. The label on the Performance Energy product also uses NAI's CarnoSyn® trademark. *Id.*

75. Honey Badger states that "Beta-alanine (CarnoSyn®) increases carnosine creation, pushing your body beyond its level of fatigue for longer, harder." *Id.*

76. Honey Badger also states that "CarnoSyn® delivers a bio-friendly form of Beta-Alanine, a naturally occurring beta amino acid essential for the synthesis of muscle carnosine. Muscle carnosine acts as a buffer, delaying the onset of muscle fatigue and failure." *Id.*

77. The label for the Performance Energy product states that the CarnoSyn® trademark is a registered trademark of NAI and that it is covered by one or more patents owned by NAI. *Id.*

78. By selling dietary supplements that contain beta-alanine obtained from Creative, Honey Badger is infringing NAI's patent rights, for which it does not have a license.

79. Honey Badger infringes at least claim 1 of the '084 patent because it sells its Performance Energy product, which is a human dietary supplement that contains beta-alanine in a unit dosage of between 0.4 grams to 16 grams. *Id.*

80. Honey Badger makes statements in association with the promotion of its Performance Energy product that induce infringement of at least claim 1 of the '596 patent. For example, Honey Badger states that "CarnoSyn® delivers a bio-friendly

FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT

form of Beta-Alanine, a naturally occurring beta amino acid essential for the synthesis of muscle carnosine. Muscle carnosine acts as a buffer, delaying the onset of muscle fatigue and failure." *Id*.

81. By selling dietary supplements that contain beta-alanine obtained from Creative and that are marked with NAI's CarnoSyn® trademark, Honey Badger is infringing NAI's trademark rights, for which it does not have a license.

**E.    Myopharma**

82. Myopharma is a formulator and seller of nutritional supplements, including nutritional supplements containing beta-alanine. Ex. 19.

83. Myopharma owns and operates a website at http://myopharma.com, the contents of which are incorporated by reference.

84. Myopharma entered into a license agreement with NAI on July 15, 2016 in which Myopharma received license rights to NAI's trademarks and patents for the manufacture and sale of dietary supplements containing beta-alanine purchased only from NAI. Ex. 8.

85. The license agreement states that patent and trademark rights are expressly limited to beta-alanine purchased from NAI and shall not extend to beta-alanine that is bought from NAI and is mixed or comingled with beta-alanine obtained from any other source than NAI. *Id*. at ¶ 3.

86. The license agreement also states that the licensee "will not contest or aid others in contesting the validity, enforceability or NAI's ownership of and/or rights in the Patent Rights and Trademark Rights." *Id*. at ¶ 5.

87. The license agreement also states that the licensee represents and warrants that the dietary supplements it makes and sells under the license agreement "will comply with the terms of this Agreement including, without limitation, the product labeling requirements." *Id*. at ¶ 7.

88. The license agreement also states that "[i]f any legal proceeding is brought for the enforcement of this Agreement, or because of an alleged breach,

FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT

default or misrepresentation in connection with any provision of this Agreement or other dispute concerning this Agreement, the successful or prevailing party shall be entitled to recover reasonable attorneys' fees incurred in connection with such legal proceeding." *Id*. at ¶ 11.

89. The license agreement also states that the licensee "acknowledges and agrees that any actual or threatened breach of this Agreement by it will constitute immediate and irreparable harm to NAI for which monetary damages would be an inadequate remedy and that injunctive relief is an appropriate remedy for such breach." *Id*.

90. Myopharma has represented to NAI that the only entity that makes dietary supplements for it, which contain beta-alanine, is Core.

91. Core purchased beta-alanine from Creative. Ex. 16.

92. Myopharma sells a product, MyoPeak, which contains beta-alanine. Ex. 20.

93. Myopharma states that "MyoPeak is a cutting edge pre-workout performance optimizer formulated using the compounds PEAK ATP®, BetaPower$^{TM}$ and CarnoSyn®." *Id*.

94. The label for MyoPeak states that there is 1200mg of beta-alanine CarnoSyn® in one serving. *Id*.

95. Myopharma states that CarnoSyn® beta-alanine improves muscle endurance, delays fatigue during workout, enhances exercise training and improves overall muscle performance. *Id*.

96. By selling dietary supplements that contain beta-alanine obtained from Creative, Myopharma is infringing NAI's patent rights, for which it does not have a license.

97. Myopharma infringes at least claim 1 of the '084 patent because it sells its MyoPeak product, which is a human dietary supplement that contains beta-alanine in a unit dosage of between 0.4 grams to 16 grams. *Id*.

FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT

98. Myopharma's MyoPeak contains BetaPower™, which is betaine anhydrous, and Myopharma states that "Research shows that BetaPower™ Natural Betaine can significantly improve strength, energy and power in humans." *Id.*

99. BetaPower Natural Betaine is also known as trimethylglycine. Ex. 21.

100. Myopharma infringes at least claim 1 of the '376 patent because it sells its MyoPeak product, which is a composition that contains the amino acid beta-alanine and a glycine. Ex. 20.

101. By selling dietary supplements that contain beta-alanine obtained from Creative and that are marked with NAI's CarnoSyn® trademark, Myopharma is infringing NAI's trademark rights, for which it does not have a license.

**F. Direct Infringers**

102. Direct infringers of NAI's patent rights include, but are not limited to the brands and contract manufacturers disclosed in documents produced by Creative bearing production numbers CC-07743-7803 AEO and CC-07818-8285 AEO, which are hereby incorporated by reference. These direct infringers include Metabolic, Bionyx, Talos, Adaptogenics, Fit Foods, Proccor and Xtreme.

103. ESP is a human dietary supplement sold by Metabolic. Exhibit 22.

104. Metabolic infringes at least claim 1 of the '084 patent because it sells its ESP product, which is a human dietary supplement that contains beta-alanine in a unit dosage of between 0.4 grams to 16 grams. *Id.*

105. PSP is a human dietary supplement sold by Metabolic. Exhibit 23.

106. Metabolic infringes at least claim 1 of the '084 patent because it sells its PSP product, which is a human dietary supplement that contains beta-alanine in a unit dosage of between 0.4 grams to 16 grams. *Id.*

107. PSP contains Tri-Pep™, which is a mixture of Glycyl-Alanyl-L-Leucine, Glycyl-Alanyl-L-Isoleucine and Glycyl-Alanyl-L-Valine. *Id.*

108. This mixture contains glycine.

109. Metabolic infringes at least claim 1 of the '376 patent because it sells its PSP product, which is a human dietary supplement that contains beta-alanine and glycine. *Id.*

110. Beta-Alanine is a human dietary supplement sold by Bionyx. Exhibit 24.

111. Bionyx infringes at least claim 1 of the '084 patent because it sells its Beta-Alanine product, which is a human dietary supplement that contains beta-alanine in a unit dosage of between 0.4 grams to 16 grams. *Id.*

112. MotivatoR is a human dietary supplement sold by Talos.

113. Talos infringes at least claim 1 of the '084 patent because it sells its MotivatoR product, which is a human dietary supplement that contains beta-alanine in a unit dosage of between 0.4 grams to 16 grams.

114. Cardioforce is a human dietary supplement sold by Adaptogenics. Exhibit 25.

115. Adaptogenics infringes at least claim 1 of the '084 patent because it sells its Cardioforce product, which is a human dietary supplement that contains beta-alanine in a unit dosage of between 0.4 grams to 16 grams. *Id.*

116. Adaptogenics makes statements in relation to the promotion of its Cardioforce product that induce others to infringe at least claim 1 of the '596 patent. For example, Adaptogenics makes statements on the website promoting Cardioforce that "Beta Alanine effectively boosts intramuscular carnosine levels, which is responsible in fighting/buffering fatigue-causing Hydrogen Ions, allowing for extreme muscular strength, power and endurance. Increasing intramuscular carnosine levels can improve the buffering capacity of a muscle by as much as 20%. As such, Beta Alanine supplementation can dramatically delay fatigue and failure, and improve muscular working capacity and performance." *Id.*

117. Adaptogenics makes statements in relation to the promotion of its Cardioforce product that induce others to infringe at least claim 1 of the '865 patent. For example, Adaptogenics makes statements on the website promoting Cardioforce

that " clinical studies have demonstrated that Beta Alanine supplementation can significantly increase L-Carnosine blood levels, reduce symptoms of fatigue during and following strenuous exercise, and increase total muscular work performance during high intensity physical activity. . .Beta Alanine effectively boosts intramuscular carnosine levels, which is responsible in fighting/buffering fatigue-causing Hydrogen Ions, allowing for extreme muscular strength, power and endurance. Increasing intramuscular carnosine levels can improve the buffering capacity of a muscle by as much as 20%. As such, Beta Alanine supplementation can dramatically delay fatigue and failure, and improve muscular working capacity and performance." *Id.*

118. The manufacturer of Adaptogenics' Cardioforce product infringes at least claim 1 of the '610 patent because it uses beta-alanine in manufacturing Cardioforce, which is a human dietary supplement for oral consumption by mixing the beta-alanine in combination with at least one other ingredient for the manufacture of the Cardioforce, which is for oral consumption in doses over a period of time to increase carnosine content in muscle tissue to delay the onset of fatigue in a human. *Id.*

119. Mutant Mayhem is a human dietary supplement sold by Fit Foods. Exhibit 15.

120. Fit Foods infringes at least claim 1 of the '084 patent because it sells its Mutant Mayhem product, which is a human dietary supplement that contains beta-alanine in a unit dosage of between 0.4 grams to 16 grams. *Id.*

121. Ultra Octane is a human dietary supplement sold by Proccor. Exhibit 26.

122. Proccor infringes at least claim 1 of the '084 patent because it sells its Ultra Octane product, which is a human dietary supplement that contains beta-alanine in a unit dosage of between 0.4 grams to 16 grams. *Id.*

123. PRE-RX is a human dietary supplement sold by Proccor. Exhibit 27.

FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT

124. Proccor infringes at least claim 1 of the '084 patent because it sells its PRE-RX product, which is a human dietary supplement that contains beta-alanine in a unit dosage of between 0.4 grams to 16 grams. *Id*.

125. Xtreme Pumpz Pre Workout is a human dietary supplement sold by Xtreme. Exhibit 28.

126. Xtreme infringes at least claim 1 of the '084 patent because it sells its Xtreme Pumpz Pre Workout product, which is a human dietary supplement that contains beta-alanine in a unit dosage of between 0.4 grams to 16 grams. *Id*.

## Count I

### (Patent Infringement-Creative)

127. The foregoing allegations are incorporated by reference.

128. Creative has, through the sale of beta-alanine and statements made in the Blast Email, induced others (*i.e.*, contract manufacturers, brands and the end users of the brand's dietary supplement products, named herein as fictitious named DOE defendants, the additional named parties and the above-identified direct infringers) to infringe literally or under the doctrine of equivalents, one or more claims of the '084, '596, '376, '865 and '610 patents, and will continue to do so unless enjoined therefrom.

129. Creative has, through the sale of beta-alanine and statements made in the Blast Email, contributed to the infringement literally or under the doctrine of equivalents, of one or more claims of the '084, '596, '376, '865 and '610 patents.

130. Creative's infringement has been willful.

131. NAI has been irreparably harmed by Creative's acts of infringement and has suffered damages in an amount to be determined at trial.

## Count II

### (Patent Infringement-Core)

132. The foregoing allegations are incorporated by reference.

FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT

133.   Core has made, used, sold, and/or offered for sale products embodying the patented invention, thereby infringing, literally or under the doctrine of equivalents, one or more claims of the '084, '376 and '610 patents, and will continue to do so unless enjoined therefrom.

134.   Core's infringement has been willful.

135.   NAI has been irreparably harmed by Core's acts of infringement and has suffered damages in an amount to be determined at trial.

## Count III

### (Patent Infringement-Honey Badger)

136.   The foregoing allegations are incorporated by reference.

137.   Honey Badger has made, used, sold, and/or offered for sale products embodying the patented invention, thereby infringing, literally or under the doctrine of equivalents, one or more claims of the '084 patent, and will continue to do so unless enjoined therefrom.

138.   Honey Badger has, through the sale of its products and promotion of such products, including instructions for the use thereof, induced others (*i.e.*, the end users of its accused products) to infringe literally or under the doctrine of equivalents, one or more claims of the '596 patent.

139.   Honey Badger's infringement has been willful.

140.   NAI has been irreparably harmed by Honey Badger's acts of infringement and has suffered damages in an amount to be determined at trial.

## Count IV

### (Patent Infringement-Myopharma)

141.   The foregoing allegations are incorporated by reference.

142.   Myopharma has made, used, sold, and/or offered for sale products embodying the patented invention, thereby infringing, literally or under the doctrine of equivalents, one or more claims of the '084 and '376 patents, and will continue to do so unless enjoined therefrom.

FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT

143. Myopharma's infringement has been willful.

144. NAI has been irreparably harmed by Myopharma's acts of infringement and has suffered damages in an amount to be determined at trial.

## Count V

### (Trademark Infringement-Honey Badger)

145. The foregoing allegations are incorporated by reference.

146. Honey Badger 's Accused Products are used, sold, and/or offered for sale in interstate and foreign commerce.

147. In connection with its goods or services, Honey Badger has used a reproduction, counterfeit, copy, or colorable imitation of NAI's registered trademark without NAI's consent.

148. Honey Badger knowingly and willfully misrepresented to the public, *inter alia*, the facts alleged above.

149. Honey Badger used NAI's registered trademark without NAI's consent, knowing that such act is intended to be used to cause confusion, or to cause mistake, or to deceive.

150. By its statements and conduct, Honey Badger has willfully violated section 32 of the Lanham Act, 15 U.S.C. § 1114, and NAI has suffered, and will continue to suffer damage to its business, reputation, and good will and has lost sales and profits that it would have made but for Honey Badger's acts.

151. NAI has been irreparably harmed by Honey Badger's acts in violation of the Lanham Act and has suffered damages in an amount to be determined at trial.

## Count VI

### (Trademark Infringement-Myopharma)

152. The foregoing allegations are incorporated by reference.

153. Myopharma 's Accused Products are used, sold, and/or offered for sale in interstate and foreign commerce.

154. In connection with its goods or services, Myopharma has used a reproduction, counterfeit, copy, or colorable imitation of NAI's registered trademark without NAI's consent.

155. Myopharma knowingly and willfully misrepresented to the public, *inter alia*, the facts alleged above.

156. Myopharma used NAI's registered trademark without NAI's consent, knowing that such act is intended to be used to cause confusion, or to cause mistake, or to deceive.

157. By its statements and conduct, Myopharma has willfully violated section 32 of the Lanham Act, 15 U.S.C. § 1114, and NAI has suffered, and will continue to suffer damage to its business, reputation, and good will and has lost sales and profits that it would have made but for Myopharma's acts.

158. NAI has been irreparably harmed by Myopharma's acts in violation of the Lanham Act and has suffered damages in an amount to be determined at trial.

## **REQUEST FOR RELIEF**

NAI respectfully requests that this Court enter judgment against Creative and that the following relief be granted:

a. judgment that Creative has infringed one or more claims of the '084, '596, '376, '865 and '610 patents;

b. judgment that Creative's infringement of one or more claims of the '084, '596, '376, '865 and '610 patents has been willful;

c. judgement that Core has infringed one or more claims of the '084, '376 and '610 patents;

d. judgment that Core's infringement of one or more claims of the '084, '376 and '610 patents has been willful;

e. judgment that Honey Badger has infringed one or more claims of the '084, and '596 patents;

f.  judgment that Honey Badger's infringement of one or more claims of the '084, and '596 patents has been willful;

g.  judgment that Myopharma has infringed one or more claims of the '084 and '376 patents;

h.  judgment that Myopharma's infringement of one or more claims of the '084 and '376 patents has been willful;

i.  preliminary injunction and injunction against continued infringement (35 U.S.C. § 283);

j.  damages for past infringement (35 U.S.C. § 284);

k.  imposition of a constructive trust on all proceeds from the sale of accused products;

l.  increased and treble damages for willful infringement (35 U.S.C. § 284);

m.  attorneys' fees as allowed by law, including without limitation, 35 U.S.C. § 285;

n.  judgment that Honey Badger has violated the Lanham Act section 32;

o.  judgment that Myopharma has violated the Lanham Act section 32;

p.  treble damages and statutory damages;

q.  a preliminary and permanent injunction against continued violations of the Lanham Act;

r.  punitive damages allowed by law;

s.  attorneys' fees as allowed by law, including without limitation, 15 U.S.C. § 1117(a);

t.  costs pursuant to Fed. R. Civ. P. 54(d) or as otherwise provided by law; and

u.  such other relief as the Court deems just and appropriate under the circumstances.

## JURY DEMAND

NAI hereby demands a jury trial on all issues so triable.

Dated:     March 20. 2017                     **WILSON TURNER KOSMO LLP**

                                    By:     s/ Frederick W. Kosmo, Jr.
                                            FREDERICK W. KOSMO, JR.
                                            fkosmo@wilsonturnerkosmo.com

                                            Attorney for Plaintiff
                                            NATURAL ALTERNATIVES
                                            INTERNATIONAL. INC.

**Of Counsel:**
Caroline C. Maxwell
Porzio, Bromberg & Newman, P.C.
1200 New Hampshire Ave. NW, Suite 710
Washington, DC 20036
(202) 517-1888
(202) 517-6322 (fax)

FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT

# TABLE OF CONTENTS

| EX. NO. | DESCRIPTION | PAGES |
|---------|-------------|-------|
| 1 | Import Bill of Lading Detail re Creative Compounds LLC | 31-36 |
| 2 | U.S. Patent No. 7,825,084 | 37-71 |
| 3 | July 2, 2015 email from Julie Weldon of Creative Compounds to Manav Shah | 72-73 |
| 4 | September 1, 2015 email from Julie Weldon of Creative Compounds to Manav Shah | 74-75 |
| 5 | September 10, 2015 email from Julie Weldon of Creative Compounds to Manav Shah | 76-80 |
| 6 | April 22, 2015 CarnoSyn® Beta-Alanine License Agreement between Core and NAI | 81-84 |
| 7 | May 19, 2015 CarnoSyn® Beta-Alanine License Agreement between Honey Badger and NAI | 85-88 |
| 8 | July 15, 2016 CarnoSyn® Beta-Alanine License Agreement between Myopharma and NAI | 89-92 |
| 9 | CarnoSyn® trademark, Serial No. 78372235 and Registration No. 3146289 | 93-94 |
| 10 | Carnosyn Beta Alanine® trademark, Serial No. 85606462 and Registration No. 4271217 | 95-97 |

TABLE OF CONTENTS

| 11 | U.S. Patent No. 5,965,596 | 98-121 |
|----|----------------------------|--------|
| 12 | U.S. Patent No. 7,504,376 | 122-156 |
| 13 | U.S. Patent No. 8,993,610 | 157-192 |
| 14 | U.S. Patent No. 8,470,865 | 193-228 |
| 15 | Mutant Mayhem product information (shop.iammutant.com/shop/can/supplements/mutantmayhem.html) | 229-234 |
| 16 | Creative Compounds Invoice #17418 dated January 8, 2016 (CC-07970 AEO) [Redacted] | 235-236 |
| 17 | Information from Honey Badger website (drinkhoneybadger.com/why-honey-badger/) | 237-245 |
| 18 | Honey Badger "Performance Energy" product information (drinkhoneybadger.com/product/performance-energy/) | 246-258 |
| 19 | Information from Myopharma website (www.myopharma.com/) | 259-260 |
| 20 | MyoPeak product information (www.myopharma.com/products/myopeak/) | 261-267 |
| 21 | BetaPower Natural Betaine product information (www.danisco.com/product-range/betaine/betapowerr/) | 268-270 |
| 22 | ESP product information (metabolicnutrition.com/product/esp) | 271-281 |
| 23 | PSP product information (metabolicnutrition.com/product/psp-360g) | 282-298 |

TABLE OF CONTENTS

| 24 | Pharmatech Labs' response to NAI's Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action [Redacted] | 299-347 |
|---|---|---|
| 25 | Cardioforce product information (www.cardioforce.net/ingredients.html) | 348-352 |
| 26 | Ultra Octane product information (www.proccor.com/product/ultra-octane/) | 353-356 |
| 27 | Email correspondence between Creative Compounds and Proccor, Proccor Purchase Order dated October 6, 2015, and PRE-RX product information (PROCCOR 0001-0007) [Redacted] | 357-364 |
| 28 | Xtreme Pumpz Pre Workout product information (xtremepumpz.com/) | 365-369 |

TABLE OF CONTENTS