1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

John K. Buche (SBN 233767)
BUCHE & ASSOCIATES, P.C.
875 Prospect, Suite 305
La Jolla, California 92037
Telephone: 858.459.9111
Facsimile: 858.459.9120
jbuche@buchelaw.com


Kevin J. O'Shea (*pro hac vice*)
OSHEA LAW LLC
4450 North Kildare Avenue
Chicago, IL  60630
Telephone:  (573) 388-2296 Phone
koshea@oshealawllc.com

Attorneys for Creative Compounds, LLC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATURAL ALTERNATIVES INTERNATIONAL, INC., <br><br> Plaintiff, <br><br> v. <br><br> CREATIVE COMPOUNDS, LLC, CORE SUPPLEMENTS TECHNOLOGIES, INC., HONEY BADGER LLC, MYOPHARMA, INC., and DOES 1-100, <br><br> Defendants. | Case No.:  3:16-cv-02146-H-AGS <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS** <br><br> Date:  August 28, 2017 <br> Time:  10:30 a.m. <br> Ctrm:  15A (15th Floor) <br> Judge:  Honorable Marilyn L. Huff |

i

1

**TABLE OF CONTENTS**

2
Page

3
I.      INTRODUCTION……………………………………………………………1

4
II.     LEGAL STANDARDS………………………………………………………1

5
A. Legal Standard for Motions to Dismiss Under Rule 12(c)…………………..2

6
B. Patent Eligibility Under 35 U.S.C. § 101…………………………………….3

7
C. The Two-Step Framework for Section 101………………………………….4

8
D. Section 101 Can Be Applied Based on Representative Claims……………..5

9
III.    ARGUMENT………………………………………………………………...5

10
A. The Patents Asserted by NAI……………………………………………..5

11
B. The Asserted Patents Do Not Claim Patentable Subject Matter……………6

12
1. The '596, '376 and '084 Patents Have Already Been Declared Invalid…6

13
2. The Remaining '610 and '865 Patents are Based on the Same

14
Specification as the Invalid '596, '376 and '084 Patents………………...6

15
3. The '865 Patent is Invalid…..……………………………………………7

16
a.  Independent Claim 1 in Invalid………………………………………7

17
b.  The Remaining Claims of the '865 Patent are Invalid…..………10

18
4. The '610 Patent is Invalid……………………………………………11

19
a.  Independent Claims 1 and 10 of the '610 Patent are Invalid…….11

20
b.  The Remaining Claims of the '610 Patent are Invalid…………...14

21
IV.     CONCLUSION………………………………………………………..15

22

23

24

25

26

27

ii

28

**TABLE OF AUTHORITIES**

**Cases**

*Affinity Labs of Texas, LLC v. DIRECTV, LLC*, 838 F.3d 1253 (Fed. Cir. 2016)...............8

*Alice Corp. Pty. v. CLS Bank Int'l*, 134 S. Ct. 2347 (2014) ...........................................8, 9

*Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 133 S. Ct. 2107 (2013) .............7

*Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Canada (U.S.)*, 687 F.3d 1266 (Fed. Cir. 2012) ...........................................................................................................................8

*Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341 (Fed. Cir. 2016) ...........................................................................................................................8

*Cleveland Clinic Found. v. True Health Diagnostics LLC*, No. 2016-1766, __ F.3d __, 2017 WL 2603137 (Fed. Cir. June 16, 2017) ................................................................8

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343 (Fed. Cir. 2014).........................................................................................9, 14, 18

*FairWarning IP, LLC v. Iatric Sys., Inc.*, 839 F.3d 1089 (Fed. Cir. 2016) ........................9

*Genetic Techs. Ltd. v. Merial L.L.C.*, 818 F.3d 1369 (Fed. Cir. 2016) ...................8, 13, 17

*Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307 (Fed. Cir. 2016)...............9

*Rapid Litig. Mgmt. Ltd. v. CellzDirect, Inc.*, 827 F.3d 1042 (Fed. Cir. 2016)...................7

**Statutes**

35 U.S.C. § 101 ...................................................................................................passim

35 U.S.C. § 112…………………………………………………………………………16

**Rules**

Fed. R. Civ. P. 12(c)...................................................................................5, 6, 7, 8

Fed. R. Civ. P. 8(a)(2) ...............................................................................................6

1    Defendant Creative Compounds, Inc. ("Creative"), by and through its undersigned

2    counsel, pursuant to Federal Rule of Civil Procedure 12(c), and this Court's Order in

3    *Natural Alternatives International, Inc. v. Allmax Nutrition, Inc., et al.*, Case No. 3:16-

4    cv-01764-H-AGS ("*Allmax* Decision") (Dkt. No. 64), files this Memorandum of Points

5    and Authorities in support of its Motion for Judgment on the Pleadings regarding Count I

6    of the First Amended Complaint ("FAC") (Dkt. No. 48) filed by Plaintiff Natural

7    Alternatives International, Inc. ("NAI"), and in support thereof, states as follows.

8    **I.    INTRODUCTION**

9    Count II of the FAC alleges that Creative indirectly infringes five beta-alanine

10   patents owned by NAI.  Three of these patents— U.S. Patent No. 7,825,084 ("the '084

11   patent"), U.S. Patent No. 7,504,376 ("the '376 patent"), and U.S. Patent No. 5,965,596

12   ("the '596 patent")—have already been held invalid by this Court.  *Allmax* Decision at

13   16, 19 and 21.  The conclusion underlying the Court's ruling is that beta-alanine is a

14   naturally occurring phenomenon that constitutes patent ineligible subject matter under 35

15   U.S.C. § 101.  *Id.*[1]

16   NAI asserts two additional beta-alanine patents against Creative that are not

17   addressed in the *Allmax* Decision:  (i) claims 1, 3, 5, 7 and 9 of U.S. Patent No. 8,470,865

18   ("the '865 patent"); and (ii) claims 1, 2, 3, 5, 8, 9 and 10 of U.S. Patent No. 8,993,610

19   ("the '610 patent").  The '865 and '610 patents are in the same family as the '596, '376

20   and '084 patents, and all five patents share identical specifications in all relevant respects.

21   All of the claims focus on modes and administration of beta-alanine.

22

23   ───────────────

24   [1] This motion is essentially identical to the 12(c) Motion filed by Hi-Tech Pharmaceuticals, Inc.
     in Case No. 16-cv-02343-H-AGS on July 10, 2017.  (*Hi-Tech* Dkt. No. 57.)  However, NAI is
25   asserting the '376 patent against Creative in this case, which is not asserted in the *Hi-Tech* case.
     Also, NAI is asserting U.S. Patent NO. RE45,947 ("the '947 patent") in the *Hi-Tech* case but
26   that patent is not asserted against Creative.  The Court invalidated both the '376 patent and the
27   '947 patent in the *Allmax* Decision.

28                                         1

1    Under these circumstances, the claims of the '865 and '610 patents are invalid

2  pursuant to 35 U.S.C. § 101 for the same reasons that the Court held the '084, '596 and

3  '376 patents invalid.  Creative therefore requests that NAI's indirect patent infringement

4  claims set forth in Count I of the FAC be dismissed, with prejudice, on the same grounds.

5  **II.    LEGAL STANDARDS**

6      **A.    Legal Standard for Motions to Dismiss Under Rule 12(c)**

7      Federal Rule of Civil Procedure 12(c) provides: "[a]fter the pleadings are closed—

8  but early enough not to delay trial—a party may move for judgment on the pleadings."

9  The standard for deciding a Rule 12(c) motion "is 'functionally identical'" to the standard

10  for deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).

11  *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 n.4 (9th Cir.

12  2011) (quoting *Dworkin v. Hustler Magazine Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989));

13  accord *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012).  In patent cases, a

14  motion to dismiss pursuant to Rule 12(c) is governed by the applicable law of the

15  regional circuit.  *K-Tech Telecommunications, Inc. v. Time Warner Cable, Inc.*, 714 F.3d

16  1277, 1282 (Fed. Cir. 2013); *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 841 F.3d

17  1288, 1293 (Fed. Cir. 2016).

18      Rule 8(a)(2) requires that a pleading contain "a short and plain statement of the

19  claim showing that the pleader is entitled to relief."  The function of this pleading

20  requirement is to "give the defendant fair notice of what the … claim is and the grounds

21  upon which it rests."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A motion to

22  dismiss under Rule 12(c) tests the legal sufficiency of the pleadings and allows a court to

23  dismiss a complaint if the plaintiff has failed to state a claim upon which relief can be

24  granted.  *Conservation Force v. Salazar*, 646 F.3d 1240, 1241 (9th Cir. 2011).

25      A complaint will survive a Rule 12(c) motion to dismiss if it contains "enough

26  facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  "A

27  claim has facial plausibility when the plaintiff pleads factual content that allows the court

28                                              2

1    to draw the reasonable inference that the defendant is liable for the misconduct alleged."

2    *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A pleading that offers 'labels and

3    conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"

4    *Id*. (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders

5    'naked assertion[s]' devoid of 'further factual enhancement.'" *Id*. (quoting *Twombly*, 550

6    U.S. at 557). Accordingly, dismissal for failure to state a claim is proper where the claim

7    "lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory."

8    *Mendiondo v. Centinela Hosp. Med. Ctr*., 521 F.3d 1097, 1104 (9th Cir. 2008).

9            In reviewing a Rule 12(c) motion to dismiss, a district court must accept as true all

10   facts alleged in the complaint, and draw all reasonable inferences in favor of the plaintiff.

11   *Retail Prop. Trust v. United Bhd. of Carpenters & Joiners of Am*., 768 F.3d 938, 945 (9th

12   Cir. 2014). But the court need not accept "legal conclusions" as true. *Iqbal*, 556 U.S. at

13   678. Further, it is improper for a court to assume the plaintiff "can prove facts which it

14   has not alleged or that the defendants have violated the … laws in ways that have not

15   been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of*

16   *Carpenters*, 459 U.S. 519, 526 (1983).

17   **B.    Patent Eligibility Under 35 U.S.C. § 101**

18           Section 101 of the Patent Act defines patent-eligible subject matter as "any new

19   and useful process, machine, manufacture, or composition of matter, or any new and

20   useful improvement thereof." 35 U.S.C. § 101. The Supreme Court has "'long held that

21   this provision contains an important implicit exception[:] laws of nature, natural

22   phenomena, and abstract ideas are not patentable.'" *Ass'n for Molecular Pathology v.*

23   *Myriad Genetics, Inc.*, 133 S. Ct. 2107, 2116 (2013). "The concern underlying these

24   judicial exclusions is that 'patent law not inhibit further discovery by improperly tying up

25   the future use of these building blocks of human ingenuity.'" *Rapid Litig. Mgmt. Ltd. v.*

26   *CellzDirect, Inc.*, 827 F.3d 1042, 1047 (Fed. Cir. 2016).

27           The Federal Circuit has expressly recognized a Rule 12(c) motion is a proper

28                                                        3

1   procedure for determining patent eligibility under 35 U.S.C. § 101.  *Genetic Techs. Ltd.*

2   *v. Merial L.L.C.*, 818 F.3d 1369, 1373 (Fed. Cir. 2016); *see also Amdocs (Israel) Ltd.*,

3   841 F.3d at 1293 (reviewing eligibility under § 101 on an appeal from a grant of

4   judgment on the pleadings under Rule 12(c)); *Bascom Glob. Internet Servs., Inc. v. AT&T*

5   *Mobility LLC*, 827 F.3d 1341, 1347 (Fed. Cir. 2016) ("Courts may … dispose of patent-

6   infringement claims under § 101 whenever procedurally appropriate.").  Further, where

7   there is "no claim construction dispute relevant to the eligibility issue," evaluation of a

8   patent claim's subject matter eligibility under § 101 can proceed before claim

9   construction.  *Genetic Techs.*, 818 F.3d at 1373; *see also Cleveland Clinic Found. v. True*

10  *Health Diagnostics LLC*, No. 2016-1766, __ F.3d __, 2017 WL 2603137, at *6 (Fed. Cir.

11  June 16, 2017) ("[W]e have repeatedly affirmed § 101 rejections at the motion to dismiss

12  stage, before claim construction or significant discovery has commenced."); *see also*

13  *Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Canada (U.S.)*, 687 F.3d 1266, 1273

14  (Fed. Cir. 2012) ("[C]laim construction is not an inviolable prerequisite to a validity

15  determination under § 101.").

16      **C.      The Two-Step Framework for Section 101**

17      "The Supreme Court has devised a two-stage framework to determine whether a

18  claim falls outside the scope of section 101." *Affinity Labs of Texas, LLC v. DIRECTV,*

19  *LLC*, 838 F.3d 1253, 1257 (Fed. Cir. 2016); *see also Alice Corp. Pty. v. CLS Bank Int'l*,

20  134 S. Ct. 2347, 2355 (2014).  "The prescribed approach requires a court to determine (1)

21  whether the claim is directed to a patent-ineligible concept, *i.e.*, a law of nature, a natural

22  phenomenon, or an abstract idea, and if so, (2) whether the elements of the claim,

23  considered both individually and as an ordered combination, add enough to transform the

24  nature of the claim into a patent-eligible application." *Affinity Labs*, 838 F.3d at 1257

25  (internal quotation marks omitted) (citing *Alice*, 134 S. Ct. at 2355).

26      The first step of the *Alice* inquiry requires the court "to look at the 'focus of the

27  claimed advance over the prior art' to determine if the claim's 'character as a whole' is

28                                              4

1  directed to excluded subject matter." *Id*. "The [second] step requires the court to look

2  with more specificity at what the claim elements add, in order to determine 'whether they

3  identify an "inventive concept" in the application of the ineligible subject matter' to

4  which the claim is directed." *Id.* at 1258. "This inventive concept must do more than

5  simply recite 'well-understood, routine, conventional activity.'" *FairWarning IP, LLC v.*

6  *Iatric Sys., Inc.*, 839 F.3d 1089, 1093 (Fed. Cir. 2016); *Intellectual Ventures I LLC v.*

7  *Symantec Corp.*, 838 F.3d 1307, 1313 (Fed. Cir. 2016) ("'[S]imply appending

8  conventional steps, specified at a high level of generality,' which are 'well known in the

9  art' and consist of 'well-understood, routine, conventional activit[ies]' previously

10  engaged in by workers in the field, is not sufficient to supply the inventive concept.").

11  **D.     Section 101 Can Be Applied Based on Representative Claims**

12       While individual patent claims are independent legal rights, courts are free to treat

13  claims together for purposes of resolving patentable subject matter where those claims

14  contain the same basic elements. *Content Extraction & Transmission LLC v. Wells*

15  *Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014) (finding that the district

16  court "correctly determined that addressing each claim of the asserted patents was

17  unnecessary" because "all the claims are 'substantially similar and linked to the same

18  abstract idea'") (citation omitted). This approach flows from the basic principle that the

19  Section 101 analysis focuses on the subject matter of the claims, not on claim drafting.

20  *Alice*, 134 S. Ct. at 2360. Accordingly, a movant may challenge eligibility through

21  representative claims and without engaging in a repetitive attack on each claim

22  individually.

23  **III.   ARGUMENT**

24       **A.     The Patents Asserted by NAI**

25       The FAC makes specific allegations of infringement against Creative pursuant to

26  certain claims in each of the five patents-in-suit. *See*, *e.g.*, FAC ¶¶ 45-46 (indirect

27  infringement allegations), 102-126 (alleged direct infringers). These allegations are

28                                              5

1  incorporated into Count I, in which NAI alleges that Creative has indirectly infringed

2  NAI's patents.  FAC, ¶¶ 128-129.  NAI alleges in its Disclosure of Asserted Claims and

3  Infringement Contentions that Creative indirectly infringes claims 1, 3, 5, 7 and 9 of the

4  '865 patent, and claims 1, 2, 3, 5, 8, 9 and 10 of the '610 patent.  However, as pled by

5  Creative in its First Affirmative Defense, "each asserted claim of the asserted patents is

6  invalid for failure to satisfy the conditions of patentability as specified under one or more

7  sections of Title 35 of the United States Code…."  (Dkt. No. 50, Creative's Answer to

8  Amended Complaint and Counterclaims ("Creative Answer"), at 12; *see also Id.* at

9  Counterclaim I, ¶ 10 ("The asserted claims … are invalid or unenforceable for failure to

10  satisfy one or more of the requirements of Title 35 of the United States Code, including

11  without limitation 35 U.S.C. §§ 101….").)

12  **B.  The Asserted Patents Do Not Claim Patentable Subject Matter**

13  **1.  The '596, '376 and '084 Patents Have Already Been Declared**

14  **Invalid**

15  The Court previously invalidated the '596 patent, the '376 patent and the '084

16  patent as being directed to patent ineligible subject matter.  *Allmax* Decision at 16, 19 and

17  21.  Accordingly, Creative requests that its motion be granted with respect to the '596,

18  '376 and '084 patents pursuant to the *Allmax* Decision.

19  **2.  The Remaining '610 and '865 Patents are Based on the Same**

20  **Specification as the Invalid '596, '376 and '084 Patents**

21  Although the asserted claims of the '865 patent and the '610 patent appear in

22  separate patents than the claims of the invalid '596, '376 and '084 patents, all of the

23  claims are "substantially similar and linked to the same abstract idea" because the patents

24  are all related.  The '610 patent is a continuation of the '865 patent, which in turn is a

25  continuation of U.S. Patent No. 8,129,422, which in turn, is a continuation of the invalid

26  '084 patent.  All of these patents purport to be based on continuing applications that stem

27  from the original, invalid parent '596 patent through an application that gave rise to the

28

1   reissued, invalid '376 patent.[2]  Because the claims of these patents are all based on the

2   same written description, the claims of the '865 and '610 patents are directed to the same

3   unpatentable subject matter as those patents the Court held to be invalid under 35 U.S.C.

4   § 101.

5             **3.     The '865 Patent is Invalid**

6                   **a.     Independent Claim 1 is Invalid**

7        Claim 1 of the '865 patent recites:

8   1.     A method of increasing anaerobic working capacity in a human

9   subject, the method comprising:

10   a) providing to the human subject an amount of an amino acid to blood or

11   blood plasma effective to increase beta-alanyl histidine dipeptide synthesis

12   in the tissue, wherein said amino acid is at least one of:

13        i) beta-alanine that is not part of a dipeptide, polypeptide or

14   oligopeptide;

15        ii) an ester of beta-alanine that is not part of a dipeptide, polypeptide

16   or oligopeptide; or

17        iii) an amide of beta-alanine that is not part of a dipeptide, polypeptide

18   or oligopeptide; and

19   b) exposing the tissue to the blood or blood plasma, whereby the

20   concentration of beta-alanyl histidine is increased in the tissue,

21   wherein the amino acid is provided through a dietary supplement.

22   FAC, Ex. 14, '865 patent at 22:56-67, 23:1-5.

23        The analysis of this claim begins with step one of the *Alice* inquiry.  "[T]he step

24

---

25   [2]  The '376 patent purports to be a "continuation-in-part" of the preceding U.S. Patent No.

26   6,680,294.  However, the USPTO has determined, and NAI has admitted, that the '376 patent is
not entitled to this priority claim.  Regardless, this distinction is irrelevant to the § 101 validity

27   issue since, as a practical matter, the applications in question are all essentially the same.

28

1    one inquiry focuses on determining 'whether the claim at issue is 'directed to' a judicial

2    exception, such as an abstract idea.'" *Apple, Inc. v. Ameranth, Inc.*, 842 F.3d 1229, 1241

3    (Fed. Cir. 2016).    This inquiry requires courts "to look at the 'focus of the claimed

4    advance over the prior art' to determine if the claim's 'character as a whole' is directed to

5    excluded subject matter." *Affinity Labs*, 838 F.3d at 1257.

6         Claim 1 of the '865 patent recites a method of providing the amino acid beta-

7    alanine to a human subject to increase the concentration of beta-alanyl histidine dipeptide

8    in tissue.  '865 patent at 22:56-67, 23:1-5.  Because beta-alanine is the only amino acid

9    referenced, it is the focus of the claim.  *See Allmax* Decision at 13 n.11 and associated

10   text; '865 patent at 2:48-56.  The '865 patent explains that beta-alanine is an amino acid

11   that is "present in the muscles of humans and other vertebrates."  '865 patent at 3:6-8;

12   2:24-29; *see also* 8:50-52 ("These precursors, [beta-alanine and L-histidine], can be

13   generated within the body or made available via the diet."); FAC ¶ 9 ("Beta-alanine is a

14   non-essential amino acid").  Thus, the '865 patent acknowledges that beta-alanine is a

15   naturally occurring phenomenon, present in the human body, which is available to human

16   blood and tissue.[3]

17        The claimed result of increasing beta-alanyl histidine through dipeptide synthesis

18   in the tissue is also excluded subject matter because this occurs naturally from precursors

19   that form (and therefore increase the level of) dipeptide beta-alanyl-L-histidine.

20   According to the '865 patent, [d]ipeptides … of beta-alanine and histidine, and their

21   _____

22   [3]  Although the claim allows for an ester or amide of beta-alanine, these are well-known active
     derivatives.  As the '865 patent explains, an "active derivative is a compound derived from, or is
23   a precursor of, a substance and performs in the *same or similar way* in the body as the substance,
     or which is *processed into the substance* when placed into the body.  Examples include, for
24   example, esters and amides." '865 patent at 5:5-12 (emphasis added).  Such derivatives are
     nothing more than functional equivalents of beta-alanine.  Indeed, the Court already determined
25   that an ester or amide of beta-alanine is a naturally occurring phenomenon.  *Allmax* Decision, at
26   18-19.  The Court also previously determined that beta-alanine that is "not part of a dipeptide,
27   polypeptide or oligopeptide" is still a naturally occurring phenomenon.  *Id.* at 13-14, 18-19.

28                                                    8

1    methylated analogues, which include carnosine (beta-alanyl-L-histidine) … are present in

2    the muscles of humans and other vertebrates.   The beta-alanylhistidine dipeptides are

3    synthesized within the body from beta-alanine and L-histidine."   '865 patent at 2:24-28;

4    8:49-50.

5          Thus, Claim 1 of the '865 Patent is directed to beta-alanine and how it functions in

6    the human body—a natural phenomenon performing a law of nature.  Accordingly, claim

7    1 is directed to excluded subject matter, thereby satisfying step one of the *Alice* inquiry.

8    *Ariosa Diagnostics, Inc. v. Sequenom, Inc.*, 788 F.3d 1371, 1376 (Fed. Cir. 2015)

9    (finding step one of the *Alice* inquiry satisfied where the claims were directed to cell-free

10   fetal DNA (cffDNA), a naturally occurring phenomenon); *Mayo Collaborative Servs. v.*

11   *Prometheus Labs., Inc.*, 566 U.S. 66, 77 (2012) (finding that claims at issue were directed

12   to laws of nature); *Genetic Techs. Ltd. v. Merial L.L.C.*, 818 F.3d 1369, 1374-76 (Fed.

13   Cir. 2016).

14         Turning to step two of the *Alice* inquiry, the additional elements of Claim 1 of the

15   '865 patent do not identify an "inventive concept" that would transform the natural

16   phenomenon into patent eligible subject matter.  *Affinity Labs*, 838 F.3d at 1258.  The

17   additional elements recite placing beta-alanine into a dietary supplement and

18   administering it to a human.   '865 patent at 22:56-67, 23:1-5.   The '865 patent

19   acknowledges that placing a natural substance into a dietary supplement for human

20   consumption is a well-known, conventional activity.   For example, the background

21   section of the specification of the '865 patent provides that "[n]atural food supplements

22   are typically designed to compensate for reduced levels of nutrients in the modern human

23   and animal diet.  In particular, useful supplements increase the function of tissues when

24   consumed." *Id*. at 1:41-47.

25         Placing a natural substance into a dietary supplement (a conventional activity),

26   providing the supplement to administer beta-alanine (a natural phenomenon), to invoke a

27   known di-peptide synthesis of beta-alanyl-L-histidine in the tissue (a law of nature) is

28                                                    9

1   insufficient to render claim 1 patent eligible. *Ariosa*, 788 F.3d at 1377 (holding that

2   utilizing routine and convention methods for amplifying and detecting cffDNA, a natural

3   phenomenon, was insufficient to render the claims at issue patent eligible); *Alice*, 134 S.

4   Ct. at 2357-58 (holding that the introduction of a general-purpose computer to implement

5   an abstract idea was insufficient to render the claims at issue patent eligible); *Mayo*, 566

6   U.S. at 78-82 (2012) (finding the steps of administering a drug and then reconsidering the

7   dosage in light of a natural law insufficient to render the claims at issue patent eligible).

8       Based on the *Alice* inquiry, representative claim 1 of the '865 patent is directed to

9   patent-ineligible subject matter and the '865 patent is invalid under 35 U.S.C. § 101.

10                  **b.      The Remaining Claims of the '865 Patent are Invalid**

11      NAI asserts dependent claims 3, 5, 7 and 9 of the '865 patent against Creative. As

12  noted above, the Court is free to treat these claims together with claim 1 for purposes of

13  identifying unpatentable subject matter. *Content Extraction*, 776 F.3d at 1348. Here, that

14  approach is particularly appropriate because claims 3, 5, 7 and 9 all depend from invalid

15  base claim 1 and, therefore, by definition "contain the same basic elements." *Id*. Under

16  such circumstances, the entire '865 patent should be held invalid under 35 U.S.C. § 101.

17      Even if the Court is inclined to address the dependent claims separately, there are

18  no additional elements that would render the subject matter patent eligible under the *Alice*

19  inquiry. Claim 3 recites "increasing a concentration of creatine in the tissue," whereas

20  claim 5 (which depends from claim 3) recites "providing an amount of creatine to the

21  blood or blood plasma effective to increase the concentration of creatine in the tissue."

22  '865 patent at 23:10-11, 16-19. The '865 patent discloses that creatine is a naturally

23  occurring phenomenon, present in human tissue, that can be increased through the intake

24  of food. *Id.* at 1:65-2:3 ("Creatine… is found in large amounts in skeletal muscle and

25  other 'excitable' tissues (e.g., smooth muscle, cardiac muscle, or spermatozoa)….

26

27

28                                          10

1  Creatine synthesis in the body may also be augmented by the ingestion of creatine present

2  in meat….").[4]; *see also Id.* at 1:41-47 ("useful supplements increase the function of

3  tissues when consumed….") Accordingly, claims 3 and 5 are invalid under 35 U.S.C. §

4  101.

5  Claim 7 recites that the beta-alanine in claim 1 is provided "by ingestion." *Id.* at

6  23:24-25.  The '865 patent discloses that beta-alanine can be naturally "made available

7  via the diet," including being derived from "an ingested beta-alanylhistidine dipeptide."

8  *Id.* at 8:50-53.  Claim 9 recites that the tissue in which the beta-alanyl histidine is

9  increased "is a skeletal muscle." *Id.* at 23:28-29.  The '865 patent discloses that "[w]ithin

10  the body, beta-alanine is transported to tissues such as muscle" and likewise "[d]ipeptides

11  … of beta-alanine and histidine … are present in the muscles of humans…."  '865 Patent

12  at 8:50-54; 2:24-29.  Accordingly, claims 7 and 9 are also invalid under 35 U.S.C. § 101.

13  ### 4.    The '610 Patent is Invalid

14  #### a.    Independent Claims 1 and 10 of the '610 Patent are Invalid

15  Claim 1 of the '610 patent recites:

16  1. Use of beta-alanine in manufacturing a human dietary supplement for oral

17  consumption:

18  supplying the beta-alanine, which is not part of a dipeptide,

19  polypeptide or oligopeptide, as a single ingredient in a manufacturing step of

20  the human dietary supplement or

21  mixing the beta-alanine, which is not part of a dipeptide, polypeptide

22  or oligopeptide, in combination with at least one other ingredient for the

---

[4] The Court has previously determined that (1) creatine is a naturally occurring phenomenon that constitutes excluded subject matter; and (2) mixing different natural phenomena together, in an effective amount, is insufficient to render a purported invention patent eligible. *Allmax* Decision at 17-18 (citing *Funk Bros. Seed Co. v. Kalo Inoculant Co.*, 333 U.S. 127, 130-31 (1948) and *Ariosa*, 788 F.3d at 1379).

1    manufacture of the human dietary supplement,

2         whereby the manufactured human dietary supplement is for oral

3    consumption of the human dietary supplement in doses over a period of time

4    increases beta-alanyl histidine levels in muscle tissue sufficient to delay the

5    onset of fatigue in the human.

6  FAC, Ex. 13, '610 patent at 22:24-37.  Claim 10 is identical to claim 1 except that the

7  ingredients are "dry."  *Id*. at 22:58-23:5.

8       The Section 101 analysis claim begins with step one of the *Alice* inquiry.  To the

9  extent claims 1 and 10 of the '610 patent can be understood[5], they recite the use of beta-

10  alanine in manufacturing a dietary supplement in which it is either supplied alone, or

11  mixed with another ingredient, and available for oral consumption by a human, in doses

12  over time, to increase beta-alanyl histidine levels in muscle tissue sufficient to delay the

13  onset of fatigue.  Since beta-alanine is the only ingredient referenced, beta-alanine is the

14  focus of these claims.  *See Allmax* Decision at 13 n.11 and associated text.  As established

15  *supra*, beta-alanine is a naturally occurring phenomenon, present in the human body,

16  which is available to human blood and tissue.[6]  '610 patent at 3:6-8; 2:24-29; 8:50-52.

17       The claimed result of increasing beta-alanyl histidine to delay the onset of fatigue

18  is also excluded subject matter because this occurs naturally from precursors that form

19  (and therefore increase the level of) the dipeptide beta-alanyl-L-histidine in human tissue.

20  According to the '610 patent, [d]ipeptides … of beta-alanine and histidine, and their

21  methylated analogues, which include carnosine (beta-alanyl-L-histidine) … are present in

22

23

24  [5]  Creative believes that all of the claims of the '610 patent are indefinite under 35 U.S.C. § 112,
second paragraph, at least because no "use" takes place and the claims lack any transitional
25  phrase (without which the scope of the claim cannot be ascertained).

26  [6]  As noted above, the Court has ruled that beta-alanine that is "not part of a dipeptide,
polypeptide or oligopeptide" is a naturally occurring phenomenon.  *Allmax* Decision at 13-14,
27  18-19.

28                                         12

the muscles of humans and other vertebrates." '610 patent at 2:24-29.  Moreover, "[t]he beta-alanylhistidine dipeptides are synthesized within the body from beta-alanine and L-histidine."    *Id.* at 8:49-50.    Consequently, "[a]n increase of creatine and beta-alanylhistidine dipeptides in the muscles can increase the tolerance of the cells to an increase in hydronium ion production with anaerobic work and lead to an increase in endurance during exercise before the onset of fatigue." *Id.* at 6:62-66.

Thus, claims 1 and 10 of the '865 patent are directed to beta-alanine and how it functions in the human body—a natural phenomenon performing a law of nature. Accordingly, claims 1 and 10 are directed to excluded subject matter, thereby satisfying step one of the *Alice* inquiry.  *Ariosa* at 1376; *Mayo* at 77; *Genetic Techs.* at 1374-76.

Turning to step two of the *Alice* inquiry, the additional elements of claims 1 and 10 of the '610 patent do not identify an "inventive concept" that would transform the claimed natural phenomenon into patent eligible subject matter.  *Affinity Labs*, 838 F.3d at 1258.  The additional elements recite "supplying" beta-alanine as a single ingredient or "mixing" it with another ingredient.  '610 patent, 22:60-23:1-5.    These steps are perfunctory.  The '610 patent acknowledges that placing one or more natural substances into a dietary supplement for human consumption is a well-known, conventional activity. *Id*. at 1:41-47 (referring to compensating for reduced levels of nutrients (plural)).  The "one other ingredient" is not even identified and therefore could be a common excipient (*e.g.*, fillers, bulking agents, diluents, etc.)   Finally, it is self-evident that ingredients in dietary supplements can be dry and given in doses over a period of time (hence the terms "diet" and "supplement").   In sum, placing a natural substance, either alone or together with other ingredients, in a dietary supplement for oral consumption, in an amount over time, is insufficient to render claim 1 patent eligible.  *Ariosa*, 788 F.3d at 1377; *Alice*, 134 S. Ct. at 2357-58; *Mayo*, 566 U.S. at 78-82.

In light of the entire *Alice* inquiry, representative claims 1 and 10 of the '610 patent are directed to patent-ineligible subject matter and the '610 patent is invalid under

13

1  35 U.S.C. § 101.

2                    **b.      The Remaining Claims of the '610 Patent are Invalid**

3         NAI asserts dependent claims 2, 3, 5, 8 and 9 against Creative.  As noted above,

4  the Court may treat these claims together with independent claims 1 and 10 for purposes

5  of identifying unpatentable subject matter.  *Content Extraction*, 776 F.3d at 1348.  Here,

6  that approach is particularly appropriate since claims 2, 3, 5, 8 and 9 all depend from

7  invalid base claim 1 and, therefore, by definition "contain the same basic elements."  *Id.*

8  Under such circumstances, the entire '610 patent should be held invalid under 35 U.S.C.

9  § 101.

10        Even if the Court is inclined to address the dependent claims separately, there are

11  no additional elements that render the subject matter patent eligible under step two of the

12  *Alice* inquiry.  Claims 2 and 3 do nothing other than recite routine doses (grams) and

13  times (two weeks), respectively.  '610 patent at 22:38-41.  Claim 5 merely requires that

14  the beta-alanine be combined with another ingredient (a routine task).  *Id.* at 22:45-47.

15  Claims 8 and 9 recite common physical forms for the supplement and beta-alanine,

16  respectively, such as "a liquid form, solid form or ingestible suspension" or a powder.  *Id.*

17  at 22:52-57.  Mixing beta-alanine, a natural phenomenon, with creatine, another natural

18  phenomena, and placing the mixture in routine dietary supplementary forms, to be taken

19  in specific doses, over specific times, is insufficient to render dependent claims 2, 3, 5, 6,

20  8 and 9 patent eligible.  *Funk Bros.*, 333 U.S. at 130-31 (holding that mixing different

21  natural phenomena together is insufficient to render an invention patent eligible).

22  Accordingly, claims 3, 5, 8 and 9 of the '610 patent are also invalid under 35 U.S.C. §

23  101

24

25

26

27

28                                           14

1 | **IV.    CONCLUSION**

2 |      For the foregoing reasons, the '865 and '610 patents should be declared invalid

3 | pursuant to 35 U.S.C. § 101 and Creative's motion to dismiss Count I of the FAC, with

4 | prejudice, should be granted.

5 |

6 | Dated:  July 19, 2017                     Respectfully submitted,

7 |

8 |                     By:   /s/John K. Buche

                              John K. Buche (SBN 239477)

9 |                               BUCHE & ASSOCIATES, P.C.

10 |                               875 Prospect, Suite 305

                              La Jolla, California 92037

11 |                               Telephone: 858.459.9111

12 |                               Facsimile: 858.459.9120

                              jbuche@buchelaw.com

13 |

14 |                               Kevin J. O'Shea (*pro hac vice*)

15 |                               OSHEA LAW LLC

                              4450 North Kildare Avenue

16 |                               Chicago, IL  60630

17 |                               Telephone:  (573) 388-2296 Phone

                              koshea@oshealawllc.com

18 |

19 |                               Attorneys    for    Defendant    Creative

                              Compounds, LLC

20 |

21 |

22 |

23 |

24 |

25 |

26 |

27 |

28 | 15

1

## CERTIFICATE OF SERVICE

2

3

I hereby certify that on July 19, 2017, the foregoing document described as **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS** was filed with the Clerk of the Court using CM/ECF which will send notification of such filing to the attorneys of record in this case.

4

5

6

/s/John K. Buche
John K. Buche

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

16

3:16-cv-02146-H-AGS