WILSON TURNER KOSMO LLP
FREDERICK W. KOSMO, JR. (138036)
HUBERT KIM (204957)
550 West C Street, Suite 1050
San Diego, California 92101
Tel: (619) 236-9600
Fax: (619) 236-9669
E-mail: fkosmo@wilsonturnerkosmo.com
E-mail: hkim@wilsonturnerkosmo.com

PORZIO, BROMBERG & NEWMAN, P.C.
KEVIN M. BELL (Admitted *Pro Hac Vice*)
RICHARD J. OPARIL (Admitted *Pro Hac Vice*)
W. JOHN MCKEAGUE (Admitted *Pro Hac Vice*)
SCOTT A.M. CHAMBERS, PH.D. (Admitted *Pro Hac Vice*)
CAROLINE C. MAXWELL (Admitted *Pro Hac Vice*)
1200 New Hampshire Ave., NW, Suite 710
Washington, DC 20036
Tel: (202) 517-1888
Fax" (202) 517-6322 (fax)
E-mail: kmbell@pbnlaw.com
E-mail: rjoparil@pbnlaw.com
E-mail: wjmckeague@pbnlaw.com
E-mail: sachambers@pbnlaw.com
E-mail: ccmaxwell@pbnlaw.com

Attorneys for Plaintiff and Counter-Defendant
NATURAL ALTERNATIVES INTERNATIONAL, INC.

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATURAL ALTERNATIVES INTERNATIONAL, INC., <br><br> Plaintiff, <br><br> v. <br><br> CREATIVE COMPOUNDS, LLC, CORE SUPPLEMENT TECHNOLOGIES, INC., HONEY BADGER LLC, MYOPHARMA, INC., and DOES 1-100, <br><br> Defendants. | Case No. 16-cv-02146-H-AGS <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF NATURAL ALTERNATIVES INTERNATIONAL, INC.'S OPPOSITION TO DEFENDANT CREATIVE COMPOUNDS, LLC'S MOTION FOR JUDGMENT ON THE PLEADINGS** <br><br> Date: September 5, 2017 <br> Time: 10:30 a.m. <br> District Judge: Hon. Marilyn L. Huff <br> Courtroom: 15A (Carter/Keep) <br> Trial Date: July 31, 2018 |

Case No. 16-cv-02146-H-AGS

OPPOSITION TO DEFENDANT CREATIVE COMPOUNDS, LLC'S MOTION
FOR JUDGMENT ON THE PLEADINGS

1

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION .......................................................................... 1

II.   BACKGROUND .......................................................................... 3

III.  ARGUMENT ............................................................................... 7

      A.    LEGAL STANDARD ......................................................... 7

      B.    CREATIVE'S § 101 ARGUMENT SHOULD BE REJECTED
            BECAUSE THE PATENTS-IN-SUIT ARE DIRECTED TO
            PATENT-ELIGIBLE SUBJECT MATTER ......................... 9

            1.    The '596, '084, and '376 Patents are Valid. ........................ 12

            2.    The Method Claims of the '865 Patent are Valid. ................... 13

            3.    The '610 Patent Is Not Directed To An Exception Under
                  § 101 .................................................................... 19

IV.   CONCLUSION .......................................................................... 22

Case No. 16-cv-02146-H-AGS

OPPOSITION TO DEFENDANT CREATIVE COMPOUNDS, LLC'S MOTION
FOR JUDGMENT ON THE PLEADINGS

## <u>TABLE OF AUTHORITIES</u>

**Federal Cases**

*Accenture Glob. Servs., GmbH v. Guidewire Software, Inc.*,
 728 F.3d 1336 (Fed. Cir. 2013) ....................................................... 11

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
 134 S. Ct. 2347 (2014) ............................................. 9, 10, 19, 21

*Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*,
 133 S. Ct. 2107 (2013) ..................................................................... 18

*Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Canada (U.S.)*,
 687 F.3d 1266 (Fed. Cir. 2012) ...................................................... 11

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007) ........................................................................... 8

*Bilski v. Kappos*,
 561 U.S. 593 (2010) ..................................................................... 9, 11

*Bristol-Myers Squibb Co., v. Merck & Co., Inc.*,
 2016 WL 1072841 (D. Del. Mar. 17, 2016) ................................... 12

*Chavez v. United States*,
 683 F.3d 1102 (9th Cir. 2012) ........................................................... 8

*Chiron Corp. v. Genentech, Inc.*,
 266 F.Supp.2d 1172 (E.D. Cal. 2002) ............................................. 20

*Content Extraction & Transmission LLC v. Wells Fargo Bank, NA*,
 776 F.3d 1343 (Fed. Cir. 2014) ...................................................... 11

*Diamond v. Diehr*,
 450 U.S. 175 (1981) ................................................................... 10, 18

*Enfish LLC v. Microsoft Corp.*,
 822 F.3d 1327 (Fed. Cir. 2016) ........................................................ 9

*Funk Bros. Seed Co. v. Kalo Inoculant Co.*,
 333 U.S. 127 (1948) ......................................................................... 18

*Geneva Pharms., Inc. v. GlaxoSmithKline PLC*,
 349 F.3d 1373 (Fed. Cir. 2003) ...................................................... 14

*In re Roslin Institute*,
 750 F.3d 1333 (Fed. Cir. 2014) ...................................................... 18

*Ivera Med. Corp. v. Catheter Connections, Inc.*,
 No. 13-CV-2452-H, 2014 WL 12479582 (S.D. Cal. Feb. 24, 2014) ............. 8

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
 132 S. Ct. 1289 (2012) .......................................................... 9, 10, 16

*Microsoft Corp. v. i4i Ltd. P'ship*,
 131 S. Ct. 2238 (2011) ................................................................. 9, 11

*Portland Retail Druggists Ass'n v. Kaiser Found. Health Plan*,
 662 F.2d 641 (9th Cir. 1981) ............................................................. 8

OPPOSITION TO DEFENDANT CREATIVE COMPOUNDS, LLC'S MOTION
FOR JUDGMENT ON THE PLEADINGS

*Rapid Litig. Mgmt. Ltd. v. CellzDirect, Inc.*,
    827 F.3d 1042 (Fed. Cir. 2016) ....................................................9, 10, 19, 21

*Thermolife Int'l, LLC v. Myogenix Corp.*,
    No. 13-cv-651-JLS (MDD), 2015 WL 11237635 (S.D. Cal. Dec. 8,
    2015) ................................................................................................................18

*Transport Techs., LLC v. Los Angeles County Met. Transp. Auth.*,
    No. CV 15-6423-RSWL-MRWX, 2016 WL 7444679 (C.D. Cal. July
    22, 2016) .................................................................................................8, 11, 12

*Tristrata Tech., Inc. v. ICN Pharms., Inc.*,
    313 F.Supp.2d 405 (D. Del. 2004) ...................................................................14

**Federal Statutes**

35 United States Code section 101 ...............................................................passim

35 United States Code section 282. ..............................................................11, 12

**Rules**

Federal Rule of Civil Procedure 12 .......................................................................7

OPPOSITION TO DEFENDANT CREATIVE COMPOUNDS, LLC'S MOTION
FOR JUDGMENT ON THE PLEADINGS

1

## I.   **INTRODUCTION**

Plaintiff and Counter-Defendant, Natural Alternatives International, Inc. ("NAI"), submits this Opposition to the motion of Defendant Creative Compounds, LLC ("Creative") for judgment on the pleadings.  Dkt. No. 83.  NAI has accused Creative of infringing one or more claims of five patents – U.S. Patent Nos. 5,965,596 ("the '596 patent"), 7,504,376 ("the '376 patent"), 7,825,084 ("the '084 patent"), 8,993,610 ("the '610 patent"), and 8,470,865 ("the '865 patent").  *See* First Amended Complaint ("FAC") (Dkt. No. 48) ¶¶20-24 and FAC Exhs. 2, 11-14.  Three of these patents (the '596, '376 and '084) were also at issue in the case pending before this Court captioned *Natural Alternatives International, Inc. v. Allmax Nutrition, Inc., et al.*, Case No. 3:16-cv-01764-H-AGS ("*Allmax*").  Two of the patents at issue here – both drawn to distinct method claims – were not at issue in *Allmax*.  Creative's motion for judgment seeks to apply the Court's *Allmax* ruling that the '596, '376 and '084 patents were invalid under 35 U.S.C. § 101 to all of the patents at issue in this case.

For the reasons set forth in NAI's Opposition to the dispositive motions in *Allmax* and its Motion for Partial Reconsideration (with accompanying evidence) in the same case, which are incorporated by reference, all of the patents-in-suit are subject matter eligible.[1]  Creative's motion is not based on any scientific evidence showing that the patents-in-suit lacked an inventive concept or contained steps that were routine or ordinary at the time the patents were applied for.  NAI is the only party that has supplied the Court with relevant scientific evidence.  As set forth in the patents-in-suit, NAI's Opposition to the *Allmax* motion, and its Motion for Partial Reconsideration, the inventive concept of the patents-in-suit are not supplementing the diet to make up for low levels of beta-alanine in the diet.  *See Allmax* Dkt. No. 67-5 ¶7.  The inventive concept is to unnaturally over-supplement the normal/natural levels of beta-alanine in persons, over time, to force an override of the homeostatic nature of

---

[1] *Allmax* Dkt. Nos. 56 and 67 are incorporated herein by reference.

OPPOSITION TO DEFENDANT CREATIVE COMPOUNDS, LLC'S MOTION
FOR JUDGMENT ON THE PLEADINGS

1    muscle tissue to achieve an unnatural level of carnosine synthesis.  This

2    transformative result was not attainable prior to the invention.  *Id.*  One of ordinary

3    skill in the art, Dr. Jay Hoffman, has sworn that:

4              Only after Dr. Harris' groundbreaking research did the use
             of beta-alanine as a human dietary supplement start to
5              become acknowledged as an accepted product used in
             methods of increasing the anaerobic working capacity of
6              muscles.  His results in this regard were highly unexpected
             by those of ordinary skill in the art at the time of his
7              invention.  This invention and associated treatments and
             uses do not merely encompass natural methods of exposing
8              beta-alanine to human tissue because natural methods of
             exposure have not been shown to increase the carnosine
9              content in the tissue.  His method requires such high levels
             of beta-alanine over such an extended period of time that it
10             would not be found in nature, even for an obligate carnivore
             (*i.e.*, an animal whose diet consists primarily of meat).  I
11             would characterize such methods as distinctly unnatural.

12   *Id.* ¶6; *see also, Allmax* Dkt. No. 67-3 at p. 8 ("Only when the body has **excess** beta-

13   alanine (**via supplementation**) does it yield elevated muscle carnosine levels.  Hence,

14   the main rationale to supplementing with beta-alanine is to increase the concentrations

15   of carnosine in muscle tissue.") (emphasis added).  The inventors relied on the

16   scientific findings of their discovery to create a *new and improved* way of

17   supplementing the body to effectively obtain the desired result.

18        It would be impossible for a person to achieve the benefits of the invention by

19   consuming a natural and normal diet.  Dr. Hoffman has calculated that a person would

20   have to eat 109 Big Macs every day for weeks (in addition to eating a normal diet) to

21   theoretically obtain the benefit of the patented beta-alanine human dietary supplement

22   invention.  *Allmax* Dkt. No. 67-5 ¶¶15-16.  This new method of treatment is outside of

23   a natural law or phenomena.  *Id.*  The '865 and '610 patents are subject matter

24   eligible.  Both are drawn to methods – method of use in the '865 patent and method of

25   manufacturing the dietary supplement described in the '610 patent.

26        This Court's decision in *Allmax* was the first in the country to invalidate a

27   dietary supplement method of use patent based on § 101.  Companies and universities

28

OPPOSITION TO DEFENDANT CREATIVE COMPOUNDS, LLC'S MOTION
FOR JUDGMENT ON THE PLEADINGS

1   have spent millions of dollars to research and develop patented dietary supplement

2   technologies that make up a $40 billion industry.  Extending the Supreme Court's

3   precedent to attempt to cover the method claims of the '865 and '610 patents would be

4   a tectonic shift in the law and business models for large sectors of the economy and,

5   particularly since patents are presumed to be valid (35 U.S.C. § 282), erroneous.[2]

## II.   BACKGROUND

7       NAI is a formulator, manufacturer, marketer, and supplier of nutritional

8   supplements.  FAC ¶14.  NAI sells its branded CarnoSyn® beta-alanine product, a

9   leading ingredient in sports nutrition human dietary supplements, to customers

10  throughout the United States and in other countries.  NAI's CarnoSyn® product is

11  covered by a portfolio of trademark and patent rights.  *Id*. ¶1.

12      NAI alleges that Creative imports, offers to sell and sells beta-alanine to dietary

13  supplement manufacturers and customers in the United States.  *Id*. ¶¶36-39.

14      On August 24, 2016, NAI filed a Complaint against Creative, alleging claims

15  for patent infringement.  Dkt. No 1.  On March 20, 2017, NAI filed the FAC alleging

16  the same claims, but adding additional patents and parties.  Dkt. No. 48.

17      On April 3, 2017, Creative filed its Answer to the FAC and Counterclaim

18  against NAI.  Dkt. No. 50.  On April 6, 2017, NAI filed its Answer to the

19  Counterclaim.  Dkt. No. 51.  On July 19, 2017, after the Court's decision in *Allmax*,

20  Creative filed a motion for judgment on the pleadings as to NAI's patent infringement

21  claims.  Dkt. No. 83.[3]

---

24  [2] The Biotechnology Innovation Organization has provided a letter regarding its
    public position on § 101 jurisprudence and the still-evolving case law in the life
25  sciences arena and expresses its hope that district courts will render decisions on
    patent eligibility on a well-developed record to aid in the creation of robust precedent.
26  Declaration of Richard J. Oparil ("Oparil Decl.") ¶5; Oparil Decl. Exh. 3.

27  [3] Creative moved for judgment on the pleadings nine days after Hi-Tech also moved
    for judgment on the pleadings and copied Hi-Tech's motion, including typographical
28  errors.

OPPOSITION TO DEFENDANT CREATIVE COMPOUNDS, LLC'S MOTION
FOR JUDGMENT ON THE PLEADINGS

NAI owns 46 patents in the United States and foreign countries related to beta-alanine.  Beta-alanine is a non-essential amino acid. In numerous scientific studies, CarnoSyn® beta-alanine, when used as a dietary supplement as directed by the patents, has been proven to delay the onset of fatigue in muscle cells, thereby eliminating muscle fatigue and soreness and has been shown to improve athletic performance.  FAC ¶15.

There are five NAI patents asserted against Creative here – the '596 patent, '376 patent, '084 patent, '610 patent, and '865 patent.  FAC ¶¶20-24 and FAC Exhs. 2, 11-14.  Three of these patents were also at issue in *Allmax*.  The two defendants in *Allmax* moved to dismiss and for judgment on the pleadings that the '596, '376 and '084 patents (and U.S. Patent No. RE45,947, which is not at issue here) were ineligible under 35 U.S.C. § 101.  On June 26, 2017, the Court granted the motions and dismissed the patent claims with prejudice.  *Allmax* Dkt. No. 64.  NAI filed a motion for partial reconsideration of that decision, which is pending.  *Allmax* Dkt. No. 67.

The '376 and '084 patents cover product claims, whereas the '596 patent is directed to methods of use.[4]  The '865 and '610 patents, which are asserted against Creative but not Allmax, are method claims (and in the case of the '610 patent, a method of manufacturing).  Claim 1 of the '865 patent reads:

> A method of increasing anaerobic working capacity in a human subject, the method comprising:
> a) providing to the human subject an amount of an amino acid to blood or blood plasma effective to increase beta-

---

[4] Claim 1 of the '596 patent is directed to a method of regulating the hydronium ion concentration in human tissue by providing an amount of beta-alanine as taught by the patent to the blood or blood plasma effective to increase beta-alanylhistidine dipeptide (carnosine) synthesis in the human tissue, exposing the human tissue to the blood or blood plasma and thereby increasing the carnosine in the human tissue.  FAC ¶26. Claim 1 of the '376 patent is directed to a composition comprising glycine and an amino acid selected from the group of beta-alanine, an ester of beta-alanine and an amide of beta-alanine, or a composition comprising glycine and a dipeptide selected from the group of a beta-alanine dipeptide and a beta-alanylhistidine di-peptide.  *Id.* ¶27.  Claim 1 of the '084 patent is directed to a human dietary supplement comprising beta-alanine in a unit dosage of between 0.4 grams to 16 grams.  *Id.* ¶25.

Case No. 16-cv-02146-H-AGS

OPPOSITION TO DEFENDANT CREATIVE COMPOUNDS, LLC'S MOTION FOR JUDGMENT ON THE PLEADINGS

alanylhistidine dipeptide synthesis in the tissue, wherein said amino acid is at least one of:

    i) beta-alanine that is not part of a dipeptide, polypeptide or oligopeptide;

    ii) an ester of beta-alanine that is not part of a dipeptide, polypeptide or oligopeptide; or

    iii) an amide of beta-alanine that is not part of a dipeptide, polypeptide or oligopeptide; and

b) exposing the tissue to the blood or blood plasma, whereby the concentration of beta-alanylhistidine is increased in the tissue, wherein the amino acid is provided through a dietary supplement.

FAC Exh. 14 at pp. 227, 228. Claim 1 is directed to a method of increasing anaerobic working capacity in a human subject comprising providing to the human subject an amount of the amino acid beta-alanine that is not part of a dipeptide, polypeptide, or oligopeptide, effective to increase beta-alanylhistidine dipeptide, *i.e.*, carnosine, synthesis in a tissue and exposing the tissue to the blood or blood plasma, whereby the concentration of the beta-alanylhistidine dipeptide, *i.e.*, carnosine, in the tissue is increased, wherein the beta-alanine is supplied through a dietary supplement as set forth in the patent. *Id.* ¶35.

NAI has proposed constructions for the meaning of terms in the patents-in-suit with citations to supporting intrinsic evidence. Oparil Decl., Exh. 1. In the '865 patent, NAI has proposed that "increasing anaerobic working capacity" should be construed to mean "increasing the amount of work performed by a muscle under lactate producing conditions." The term "effective to increase beta-alanylhistidine dipeptide synthesis in the tissue" means "elevates beta-alanine above natural levels to cause an increase in the synthesis of beta-alanylhistidine dipeptide in the tissue." "Dietary supplement" means an addition to the human diet, which is not a natural or conventional food, which effectively increases athletic performance and is manufactured to be used over a period of time." Unlike any of the other patents-in-suit in *Allmax* or this case, the '610 patent relates to a method of manufacture. Independent claim 1 reads:

OPPOSITION TO DEFENDANT CREATIVE COMPOUNDS, LLC'S MOTION FOR JUDGMENT ON THE PLEADINGS

Use of beta-alanine in manufacturing a human dietary supplement for oral consumption;
supplying the beta-alanine, which is not part of a dipeptide, polypeptide or oligopeptide, as a single ingredient in a manufacturing step of the human dietary supplement or mixing the beta-alanine, which is not part of a dipeptide, polypeptide or oligopeptide, in combination with at least one other ingredient for the manufacture of the human dietary supplement,
whereby the manufactured human dietary supplement is for oral consumption of the human dietary supplement in doses over a period of time increases beta-alanyl histidine levels in muscle tissue sufficient to delay the onset of fatigue in the human.

FAC Exh. 13 at p. 191. Claim 1 is directed to a use of beta-alanine in manufacturing a human dietary supplement, as that term is properly construed, for oral consumption; supplying the beta-alanine, which is not part of a dipeptide, polypeptide or oligopeptide, as a single ingredient in a manufacturing step of the human dietary supplement or mixing the beta-alanine, which is not part of a dipeptide, polypeptide or oligopeptide, in combination with at least one other ingredient for the manufacture of the human dietary supplement, whereby the manufactured human dietary supplement is for oral consumption of the human dietary supplement in doses over a period of time increases beta-alanylhistidine levels in muscle tissue sufficient to delay the onset of fatigue in the human. FAC ¶31.

NAI has also proposed constructions for the '610 patent. Oparil Decl., Exh. 1. For example, in claim 1, "use of beta-alanine in manufacturing a human dietary supplement" means "making an addition to the human diet using beta-alanine, which is not a natural or conventional food, to be administered to a human over a period of time, and that effectively increases athletic performance." "Supplying the beta-alanine, which is not part of a dipeptide, polypeptide or oligopeptide, as a single ingredient in a manufacturing step of the human dietary supplement" means "providing the free amino acid beta-alanine, an ester of beta-alanine or an amide of beta-alanine in a step of making an addition to the human diet using beta-alanine as

OPPOSITION TO DEFENDANT CREATIVE COMPOUNDS, LLC'S MOTION
FOR JUDGMENT ON THE PLEADINGS

the only active ingredient, which is not a natural or conventional food, which effectively increases athletic performance when administered to a human over a period of time."  The term "mixing the beta-alanine, which is not part of a dipeptide, polypeptide or oligopeptide, in combination with at least one other ingredient for the manufacture of the human dietary supplement" means "making an addition to the human diet, which is not a natural or conventional food, and which effectively increases athletic performance when administered to a human over a period of time, using the free amino acid beta-alanine, an ester of beta-alanine or an amide of beta-alanine and at least one other active ingredient."  *Id.*  The limitation "increases beta-alanylhistidine levels in muscle tissue sufficient to delay the onset of fatigue in the human" means "that elevates beta-alanylhistidine dipeptide in muscle above natural levels."  *Id.*

There is a claim construction dispute between NAI and Creative.  The only claim term for which Creative has proposed a construction is "dietary supplement," which it contends means "an ingredient such as a vitamin, mineral, herb, amino acid, concentrate, or extract intended for ingestion which add further nutritional value to the diet by increasing tissue function."  Oparil Decl., Exh. 2.  Creative cites as evidence seven lines from the Background section of the specification of the '865 and '610 patents and a hearsay document from the Food and Drug Administration regarding the Dietary Supplement Health and Education Act of 1994, Pub. L. 103-417.  Creative's proposed construction of the term ignores intrinsic evidence and is erroneous.[5]

### III.   ARGUMENT

#### A.   LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(c), "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings."

---

[5] Creative again has copied Hi-Tech's papers in this case, providing the same claim construction and the same term for construction as Hi-Tech.

OPPOSITION TO DEFENDANT CREATIVE COMPOUNDS, LLC'S MOTION FOR JUDGMENT ON THE PLEADINGS

1   Judgment on the pleadings is properly granted when, accepting all factual allegations

2   in the complaint as true, there is no issue of material fact in dispute and the moving

3   party is entitled to judgment as a matter of law.  The analysis under Rule 12(c) is

4   "substantially identical" to the analysis under Rule 12(b)(6).  *See, e.g.*, *Chavez v.*

5   *United States*, 683 F.3d 1102, 1108 (9th Cir. 2012); *Transport Techs., LLC v. Los*

6   *Angeles County Met. Transp. Auth.*, No. CV 15-6423-RSWL-MRWX, 2016 WL

7   7444679 (C.D. Cal. July 22, 2016).

8        A complaint need only contain a short and plain statement of the claim "to give

9   the defendant fair notice of what the . . . claim is and the grounds upon which it rests."

10  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  The factual allegations need

11  only "be enough to raise a right to relief above the speculative level on the assumption

12  that all of the complaint's allegations are true." *Id*. at 545.  To survive a motion to

13  dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state

14  a claim to relief that is plausible on its face." *Ivera Med. Corp. v. Catheter*

15  *Connections, Inc.*, No. 13-CV-2452-H, 2014 WL 12479582, *2 (S.D. Cal. Feb. 24,

16  2014) (quoting *Hartmann v. Cal. Dept. of Corr. & Rehab.*, 707 F.3d 1114, 1122 (9th

17  Cir. 2013)).  "Dismissal under Rule 12(b)(6) is appropriate only where the complaint

18  lacks a cognizable legal theory or sufficient facts to support a cognizable legal

19  theory." *Id.* (quoting *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104

20  (9th Cir. 2008)).  In deciding a motion to dismiss, the court must review the contents

21  of the complaint, accepting all factual allegations as true, and drawing all reasonable

22  inferences in favor of the nonmoving party.  *Id.*  Courts must consider the complaint

23  in its entirety, as well as documents incorporated into the complaint by reference, and

24  matters of which a court may take judicial notice.  *Id.*; *Portland Retail Druggists*

25  *Ass'n v. Kaiser Found. Health Plan*, 662 F.2d 641, 645 (9th Cir. 1981).

26

27

28

1
2

**B.    CREATIVE'S § 101 ARGUMENT SHOULD BE REJECTED BECAUSE THE PATENTS-IN-SUIT ARE DIRECTED TO PATENT-ELIGIBLE SUBJECT MATTER**

3        Under Supreme Court precedent, a court must consider a threshold question

4   followed by a two-step process for analyzing patent eligibility under 35 U.S.C. § 101.

5   In determining eligibility, a court first looks to whether the claims of the patent fall

6   within the categories set forth in the Patent Act:  "Whoever invents or discovers any

7   new and useful process, machine, manufacture, or composition of matter, or any new

8   and useful improvement thereof, may obtain a patent therefor, subject to the

9   conditions and requirements of this title."  35 U.S.C. § 101.

10       There are three specific exceptions to patent eligibility under § 101:  laws of

11  nature, natural phenomena, and abstract ideas.  *Bilski v. Kappos*, 561 U.S. 593, 601

12  (2010).  Thus, if the threshold question is satisfied, the court utilizes a two-step

13  process set forth in *Mayo*, and reaffirmed in *Alice*, for "distinguishing patents that

14  claim laws of nature, natural phenomena, and abstract ideas from those that claim

15  patent-eligible applications of those concepts."  *Alice Corp. Pty. Ltd. v. CLS Bank

16  Int'l*, 134 S. Ct. 2347, 2355 (2014) (citing *Mayo Collaborative Servs. v. Prometheus

17  Labs., Inc.*, 132 S. Ct. 1289, 1296-97 (2012)).

18       The Court must determine if the claims at issue are directed to one of three

19  patent-ineligible concepts.  *Id.*  These patent-ineligible concepts are set forth to make

20  sure the claims do not preempt and take "the basic tools of scientific and technological

21  work."  *Mayo,* 132 S. Ct. at 1293.  If the answer is no and the tools are not preempted,

22  the analysis is over and the claim is patent-eligible.  *Rapid Litig. Mgmt. Ltd. v.

23  CellzDirect, Inc.*, 827 F.3d 1042, 1047 (Fed. Cir. 2016).  The Federal Circuit has

24  confirmed that "the first step of the inquiry is a meaningful one" and that "a

25  substantial class of claims are *not* directed to a patent-ineligible concept."  *Enfish LLC

26  v. Microsoft Corp.*, 822 F.3d 1327, 1335 (Fed. Cir. 2016) (emphasis in original).  Just

27  because one possible way of describing a process is a natural ability "to undergo the

28

OPPOSITION TO DEFENDANT CREATIVE COMPOUNDS, LLC'S MOTION
FOR JUDGMENT ON THE PLEADINGS

1    process does not make the claims 'directed to' that natural ability." *Rapid Litig.*,

2    *supra*, 827 F.3d at 1048-49.

3         The Supreme Court has cautioned that "an invention is not rendered ineligible

4    for patent simply because it involves" one of the patent-ineligible concepts. *Alice*,

5    *supra*, 134 S. Ct. at 2354. To take the approach that a patent should be precluded

6    simply because it touches something in the natural world would "eviscerate patent

7    law." *Mayo*, *supra*, 132 S. Ct. at 1293. *Alice* warns courts to "tread carefully in

8    construing this exclusionary principle lest it swallow all of patent law" because "[a]t

9    some level, 'all inventions . . . embody, use, rest upon, or apply laws of nature, natural

10   phenomena, or abstract ideas.'" *Alice, supra,* 134 S. Ct. at 2354 (quoting *Mayo*,

11   *supra*, 132 S. Ct. at 1293). Step one, therefore, requires more than merely identifying

12   a patent-ineligible concept underlying the claim, it requires that the claim is "directed

13   to" the patent-ineligible concept. *Rapid Litig. Mgmt.*, *supra*, 827 F.3d at 1047.

14        Even if a court determines that the claims at issue are directed to one of the

15   patent-ineligible exceptions, it must then "consider the elements of each claim both

16   individually and as an ordered combination to determine whether the additional

17   elements transform the nature of the claim into a patent-eligible application." *Alice*,

18   *supra*, 134 S. Ct. at 2355 (internal quotations omitted).

19        Under step two, if claims directed to a patent-ineligible concept improve an

20   existing process so as to transform the process into an inventive application of the

21   patent-ineligible concept, the claim is directed to a patent-eligible application of the

22   exception. *Id*. at 1358 (quoting *Mayo*, *supra*, 132 S. Ct. at 1299) (discussing *Diamond*

23   *v. Diehr*, 450 U.S. 175 (1981)). In *Mayo*, the Supreme Court found that "a process

24   that focuses upon the use of a natural law [must] also contain other elements or a

25   combination of elements, sometimes referred to as an 'inventive concept,' sufficient to

26   ensure that the patent in practice amounts to significantly more than a patent upon the

27   natural law itself." *Mayo*, *supra*, 132 S. Ct. at 1294. When patent claims are directed

28

OPPOSITION TO DEFENDANT CREATIVE COMPOUNDS, LLC'S MOTION
FOR JUDGMENT ON THE PLEADINGS

1  to a natural law, or natural phenomenon, involve well-understood, routine,

2  conventional activity previously engaged in by researchers in the field, the claims may

3  be patent-ineligible. *Id.*

4        Determining whether a claim is directed to patentable subject matter is a

5  question of law. *In re Bilski*, 545 F.3d 943, 951 (Fed. Cir. 2008). "This legal

6  conclusion may contain underlying factual issues," however. *Accenture Glob. Servs.,*

7  *GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1341 (Fed. Cir. 2013). Moreover,

8  "it will ordinarily be desirable – and often necessary – to resolve claim construction

9  disputes prior to a § 101 analysis, for the determination of patent eligibility requires a

10  full understanding of the basic character of the claimed subject matter." *Bancorp*

11  *Servs., L.L.C. v. Sun Life Assur. Co. of Canada (U.S.)*, 687 F.3d 1266, 1273–74 (Fed.

12  Cir. 2012); *see also, Transport Techs.*, *supra*, 2016 WL 7444679 at *5. When a

13  challenge to subject matter eligibility is asserted on the pleadings, courts construe all

14  claim terms in the manner most favorable to the patentee. *See, e.g.*, *Content*

15  *Extraction & Transmission LLC v. Wells Fargo Bank, NA*, 776 F.3d 1343, 1349 (Fed.

16  Cir. 2014).

17        Where factual issues exist regarding the validity of the claims of the patents-in-

18  suit, a defendant must prove such facts with "clear and convincing evidence," given

19  the presumption of validity afforded to issued patents. *See Microsoft Corp. v. i4i Ltd.*

20  *P'ship*, 131 S. Ct. 2238, 2242 (2011). The patent statute places "[t]he burden of

21  establishing invalidity of a patent or any claim thereof" on the "party asserting such

22  invalidity" and further mandates that "[e]ach claim of a patent . . . shall be presumed

23  valid independently of the validity of other claims." 35 U.S.C. § 282. Factual

24  considerations are a part of a legal analysis of patent-eligibility. In denying

25  defendant's motion to dismiss for failing to carry its evidentiary burden for dismissal

26  under § 101, the Court in *Transport Technologies* held that it could not "resolve the §

27  101 analyses before gaining a full understanding of the claimed subject matter during

28

OPPOSITION TO DEFENDANT CREATIVE COMPOUNDS, LLC'S MOTION
FOR JUDGMENT ON THE PLEADINGS

claim construction." *Transport Techs.*, *supra*, 2016 WL 7444679 at *6.  In this case, the Court needs a complete record, which would be developed through claim construction and expert evidence, to gain a full understanding of the claimed subject matter and the underlying scientific facts surrounding the inventions.  As discussed above, NAI and Creative dispute the proper meaning of the important "dietary supplement" limitation in the patents-in-suit.  *Compare* Oparil Decl., Exh. 1 *with* Oparil Decl., Exh. 2.  Until that dispute has been resolved, granting Creative a judgment on the pleadings would be in error.

In *Bristol-Myers Squibb Co., v. Merck & Co., Inc.,* 2016 WL 1072841 (D. Del. Mar. 17, 2016), the court logically and judiciously addressed the intersection of patentable subject matter, presumption of validity and unresolved factual issues at the pleadings stage.  In addressing the pleading stage, the court found that there were factual disputes regarding whether the claims "add enough" to a natural phenomenon that could not be resolved on a motion to dismiss:  "[w]hether the claims amount to an implementation step is a complicated factual determination that the court could better resolve after discovery.  Additionally, the . . . patent is entitled to a presumption of validity under 35 U.S.C. § 282. Rarely can a patent infringement suit be dismissed at the pleading stage for lack of patentable subject matter." *Id.* at *1, n.1.  Here, the Court may be able to properly resolve the eligibility issue, but only after appropriate claim construction and discovery, because the claimed invention of dietary supplements containing beta-alanine and increasing tissue function with these dietary supplements is a complicated factual determination that requires expert testimony and is admittedly in dispute.

### 1.    The '596, '084, and '376 Patents are Valid.

Creative relies on the Court's Order in the *Allmax* case, (Dkt. No. 64), for the proposition that the '596, '084, and '376 patents are invalid.  Dkt. No. 83-1 at 6.  NAI incorporates by reference its Opposition to the Allmax defendants' dispositive

OPPOSITION TO DEFENDANT CREATIVE COMPOUNDS, LLC'S MOTION
FOR JUDGMENT ON THE PLEADINGS

1    motions, NAI's Motion for Partial Reconsideration, and the attachments thereto.

2    *Allmax* Dkt. Nos. 56 and 67.  NAI reserves all rights for appeal.

3                    **2.       The Method Claims of the '865 Patent are Valid.**

4           Creative also relies on the *Allmax* decision to allege that the '865 patent is

5    invalid, even though that patent was not at issue in that case.  Dkt. No. 83-1 at 7-11.

6    Creative alleges that although the claims of the '865 patent appear in a different patent

7    than the claims of the invalid patents, they are directed to the same abstract idea

8    because the patents are related, and further argues that because "the claims of these

9    patents are all based on the same written description, the claims of the '865 and '610

10   patents are directed to the same unpatentable subject matter as those patents the Court

11   held to be invalid under 35 U.S.C. § 101."  *Id.* at 7.  Creative then allegedly conducts a

12   two-step analysis under *Alice* to reach the conclusion that the claims of the '865 patent

13   are invalid under 35 U.S.C. § 101.  *Id.* at 7-11.  Creative grossly misrepresents the

14   facts, especially those related to the inventive concept of step two under *Alice*.  For the

15   reasons set forth in NAI's Opposition and Motion to Reconsider and attachments

16   thereto filed in the *Allmax* case, Creative is wrong.

17          Creative ignores the criticality of claim construction in considering its motion.

18   For the '865 patent, NAI has proposed that the limitation of "increasing anaerobic

19   working capacity" should be construed to mean "increasing the amount of work

20   performed by a muscle under lactate producing conditions."  The term "effective to

21   increase beta-alanylhistidine dipeptide synthesis in the tissue" means "elevates beta-

22   alanine above natural levels to cause an increase in the synthesis of beta-

23   alanylhistidine dipeptide in the tissue."  "Dietary supplement" means an addition to

24   the human diet, which is not a natural or conventional food, which effectively

25   increases athletic performance and is manufactured to be used over a period of time."

26          There is a claim construction dispute between NAI and Creative.  NAI's

27   construction of "dietary supplement" is well-supported by intrinsic evidence.  Oparil

28
                                            13                    Case No. 16-cv-02146-H-AGS

               OPPOSITION TO DEFENDANT CREATIVE COMPOUNDS, LLC'S MOTION
                            FOR JUDGMENT ON THE PLEADINGS

Decl., Exh. 1.  Creative has proposed to construe "dietary supplement" to mean "an ingredient such as a vitamin, mineral, herb, amino acid, concentrate, or extract intended for ingestion which add further nutritional value to the diet by increasing tissue function"  Oparil Decl., Exh. 2.  Creative cites to seven lines from the Background section of the specification of the '865 and '610 patents and a hearsay document from the FDA regarding the Dietary Supplement Health and Education Act of 1994, Pub. L. 103-417.  Creative's proposed construction of the term is contrary to the intrinsic evidence and to NAI's proposed construction.

Adopting NAI's claim construction would render the '865 patent valid.  A functional limitation must be evaluated and considered, just like any other limitation of the claim, for what it fairly conveys to a person of ordinary skill in the pertinent art in the context in which it is used.  *See Geneva Pharms., Inc. v. GlaxoSmithKline PLC*, 349 F.3d 1373, 1383-84 (Fed. Cir. 2003) ("effective amount" is a common and generally acceptable claim term); *Tristrata Tech., Inc. v. ICN Pharms., Inc.*, 313 F.Supp.2d 405, 410-11 (D. Del. 2004) (finding patentable weight for functional limitations in the composition of matter claims such as "effective amount" and "enhancing amount" and that such functional terms removed any prior art that had small amounts that did not exhibit the functional limitation).

Here, the proper claim construction incorporates as functional limitations the claim steps or limitations that the beta-alanine is provided in massive amounts that would not conventionally, naturally, or routinely be encountered.  *Allmax* Dkt. No. 67-5 ¶¶3, 6.  The claims also incorporate the steps or limitations that the massive amounts of beta-alanine be provided for many weeks, which is certainly not conventional, natural or routine.  *Id.* ¶¶6, 16-20, 22.  And the claims' functional language provide unexpected results – which, by definition, are not conventional, natural, or routine.  With the claim construction of the '865 patent in dispute between the parties, the Court should not find the patent-ineligible.  If the Court adopts NAI's proposed

OPPOSITION TO DEFENDANT CREATIVE COMPOUNDS, LLC'S MOTION
FOR JUDGMENT ON THE PLEADINGS

1  construction, the '865 patent is drawn to eligible subject matter.  Either way,

2  Creative's motion should be denied.

3      Creative contends "[t]he claimed result of increasing beta-alanylhistidine

4  through dipeptide synthesis in the tissue is also excluded subject matter because this

5  occurs naturally from precursors that form (and therefore increase the level of)

6  dipeptide beta-alanyl-L-histidine." Dkt. No. 83-1 at 8.  Creative concludes that

7  "Claim 1 of the '865 Patent is directed to beta-alanine and how it functions in the

8  human body—a natural phenomenon performing a law of nature." *Id*. at 9.  As

9  explained more fully in the Motion to Reconsider submitted in the *Allmax* case,

10  increases in the dipeptide beta-alanyl-L-histidine do not occur naturally because it is

11  dependent on the amount of beta-alanine as well as the time spent maintaining

12  excessive amounts of beta-alanine and so the body needs **unnatural** levels of beta-

13  alanine through **supplementation** over a long period of time to increase the dipeptide

14  in the muscle.  *See, e.g.*, *Allmax* Dkt. No. 67-1 at 4-5, citing  *Allmax* Dkt. No. 67-3

15  thereto; *see also, id*. at 5, citing *Allmax* Dkt. No. 67-5 thereto ("His method requires

16  such high levels of beta-alanine over such an extended period of time that it would not

17  be found in nature, even for an obligate carnivore (*i.e.*, an animal whose diet consists

18  primarily of meat).  I would characterize such methods as distinctly unnatural.").

19      Additionally, during prosecution of the '947 patent, Dr. Jay R. Hoffman, who is

20  at least one of ordinary skill in the art (*Allmax* Dkt. No. 67-4 ¶*2*), submitted a

21  declaration in which he states "[b]eta-alanine is an amino acid that is synthesized in

22  the liver and to some extent stored in the liver.  Its synthetic pathway requires the

23  breakdown of uracil and it is metabolized into malonic dialdehyde." *Allmax* Dkt. No.

24  67-4 ¶10; *see also, id*. ¶22 (stating references cited by the Examiner "show no more

25  than that giving a single dose of beta-alanine can increase the beta-alanine

26  concentration in the blood and that this is rapidly followed by excretion of beta-

27  alanine by the kidneys.  Now we know that the vast majority of beta-alanine is

28

OPPOSITION TO DEFENDANT CREATIVE COMPOUNDS, LLC'S MOTION
FOR JUDGMENT ON THE PLEADINGS

1   converted by oxidation into malonic dialdehyde."). This shows that, while a small

2   amount of beta-alanine may be synthesized in the body, it the beta-alanine does not

3   naturally, or inevitably result in increased beta-alanyl-L-histidine dipeptide content in

4   the muscle. Rather, the natural law is that beta-alanine is excreted via the kidneys and

5   metabolized into malonic dialdehyde, which is distinct from the results of the patents-

6   in-suit.

7        For the step two analysis under *Alice*, Creative again misleadingly states that

8   "[p]lacing a natural substance into a dietary supplement (a conventional activity),

9   providing the supplement to administer beta-alanine (a natural phenomenon), to

10   invoke a known di-peptide synthesis of beta-alanyl-L-histidine in the tissue (a law of

11   nature) is insufficient to render claim 1 patent eligible." Dkt. No. 83-1 at 9-10. This

12   oversimplifies a complicated factual issue and ignores the scientifically important

13   knowledge of one of skill in the art at the time of the invention. As explained in

14   NAI's Opposition and Motion to Reconsider in the *Allmax* case (Dkt. Nos. 57 and 67

15   in the *Allmax* case and exhibits attached thereto), there is nothing well known, routine

16   and conventional about the use of beta-alanine in dietary supplements for increasing

17   tissue function. Indeed, under the simplistic assertions of Creative, no natural product

18   could be considered patent-eligible even though the Supreme Court specifically drew

19   the distinction in *Mayo* that a new way of using an existing drug was not addressed by

20   that case. *Mayo, supra,* 132 S. Ct. at 1302. Here, the Court must decide if placing a

21   natural substance into a dietary supplement that is hundreds of times greater than the

22   normal amount the body is exposed to is a conventional activity, if such a massive

23   over exposure carried out over many weeks is a natural phenomenon, and whether

24   such extreme exposure to beta-alanine is a law of nature.

25        Dr. Hoffman submitted a declaration in support of NAI's request for

26   reconsideration. *Allmax* Dkt. No. 67-5. In that declaration, Dr. Hoffman repeatedly

27   explains why the claims – when construed as proposed by NAI – do not encompass

28

16                    Case No. 16-cv-02146-H-AGS

OPPOSITION TO DEFENDANT CREATIVE COMPOUNDS, LLC'S MOTION
FOR JUDGMENT ON THE PLEADINGS

1   routine and conventional techniques to one of ordinary skill. *See, e.g.*, *id*. ¶¶6, 16-20,

2   22. Dr. Hoffman explains why the claims create unexpected results, which are the

3   antithesis of routine and conventional. *See, e.g.*, *id*. ¶¶6, 12, 17; *see also, Allmax* Dkt.

4   No. 67-3 ("The amount of carnosine that can be formed is dependent on the amount of

5   beta-alanine—not histidine—within the cell. Only when the body has excess beta-

6   alanine (via supplementation) does it yield elevated muscle carnosine levels. Hence,

7   the main rationale to supplementing with beta-alanine is to increase the concentrations

8   of carnosine in muscle tissue.").

9       Also, Roger Harris, Ph.D., one of the named inventors, submitted declarations

10  during the reexaminations of related patents regarding the science underlying the

11  inventions. Dr. Harris is clearly one of skill in the art. In his declaration, Dr. Harris

12  avers that the body maintains itself in a stable state, homeostasis, and that feeding

13  precursors of proteins, DNA, etc., does not in and of itself lead to an increase of that

14  component in the body. *Allmax* Dkt. No. 67-10 ¶7. Additionally, he explains that

15  muscle cells are bounded by membranes, which guard against passive movement of

16  metabolites and precursors such as beta-alanine into and out of the muscle cells. *Id*.

17  ¶14. The uptake of amino acids and other compounds is regulated in the body by

18  transporters, such that the homeostasis in the muscle cells is maintained. *Id*.

19  Supplementation with many substances does not cause an increase in the muscle cell

20  concentration of the substances. *Id*. ¶¶15-17. He also states that beta-alanine is

21  synthesized in the liver, but prior to studies disclosed in the patents, there was no

22  evidence showing that augmentation of hepatic synthesis by supplementing the diet

23  with beta-alanine would naturally lead to increased carnosine synthesis in the muscle.

24  *Id*. ¶19; *see also, Allmax* Dkt. No. 67-3.

25      Other evidence demonstrates the claimed invention is drawn to significantly

26  more than the alleged judicial exception. For instance, dipeptides (carnosine,

27  anserine, etc.) are the predominant source of dietary beta-alanine, not the single amino

28

---

17                              Case No. 16-cv-02146-H-AGS

OPPOSITION TO DEFENDANT CREATIVE COMPOUNDS, LLC'S MOTION
FOR JUDGMENT ON THE PLEADINGS

1    acid beta-alanine, as in the claimed inventions.  *See, e.g.*, FAC Exh. 11 ('596 patent)

2    at Col. 3, ll. 45-51; Col. 5, ll. 3-5.  This means that supplementation of the single

3    amino acid beta-alanine as claimed is not achieved naturally and most certainly not

4    naturally achieved in amounts effective to increase carnosine synthesis above the

5    homeostatic level discussed by the scholars and declarants in the sports nutrition field.

6    *Allmax* Dkt. Nos. 67-3 and 67-5 ¶¶6-8, 15-17.  Accordingly, the '865 patent is not

7    rendered patent-ineligible, and Creative's motion should be denied.

8            The method claims of the '865 patent are patent-eligible.  To be patentable

9    under § 101, an invention must be useful.  *Thermolife Int'l, LLC v. Myogenix Corp.*,

10   No. 13-cv-651-JLS (MDD), 2015 WL 11237635, at *10 (S.D. Cal. Dec. 8, 2015).

11   Section 101 should not be read to "make all inventions unpatentable because all

12   inventions can be reduced to underlying principles of nature which, once known,

13   make their implementation obvious."  *Diamond v. Diehr*, 450 U.S. 175, 189 n.12

14   (1981).  "It is now commonplace that an application of a law of nature or

15   mathematical formula to a known structure or process may well be deserving of patent

16   protection."  *Id.* at 187-88.  Thus, "a new combination of steps in a process may be

17   patentable even though all the constituents of the combination were well-known and

18   in common use before the combination was made."  *Id.* at 188.  In *Ass'n for*

19   *Molecular Pathology v. Myriad Genetics, Inc.*, 133 S. Ct. 2107, 2111 (2013), the

20   Court noted that product patents on two genes were invalid under § 101 but that

21   "patents on new applications of knowledge about the BRCA1 and BRCA2 genes"

22   would be eligible.

23           In *In re Roslin Institute*, 750 F.3d 1333 (Fed. Cir. 2014), the Federal Circuit, in

24   discussing *Funk Bros. Seed Co. v. Kalo Inoculant Co.*, 333 U.S. 127 (1948), noted

25   that "while the method of selecting the strains of bacteria might have been patent

26   eligible, the natural organism itself – the mixture of bacteria – was unpatentable."  *Id.*

27   at 1336.  The claims at issue in *Roslin Institute* were to cloned mammals, but the

28

OPPOSITION TO DEFENDANT CREATIVE COMPOUNDS, LLC'S MOTION
FOR JUDGMENT ON THE PLEADINGS

1  inventors had already obtained a patent on the method of cloning animals. *Id*. at

2  1334-1335.

3      In *Rapid Litig.*, 827 F.3d 1042, the Court found that the inventors "employed

4  their natural discovery to create a new and improved way of preserving hepatocyte

5  cells for later use." *Id*. at 1048. The Court went on to find that the method claims were

6  patent-eligible:

> 7      The end result of the '929 patent claims is not simply an
> 8      observation or detection of the ability of hepatocytes to
>        survive multiple freeze-thaw cycles. Rather, the claims are
>        directed to a new and useful method of preserving
> 9      hepatocyte cells. Indeed, the claims recite a "method of
>        producing a desired preparation of multi-cryopreserved
> 10     hepatocytes." '929 patent col. 19 l. 56-col. 20 l. 20
>        (emphasis added). Through the recited steps, the patented
> 11     invention achieves a better way of preserving hepatocytes.
>        The '929 patent claims are like thousands of others that
> 12     recite processes to achieve a desired outcome, e.g., methods
>        of producing things, or methods of treating disease. That
> 13     one way of describing the process is to describe the natural
>        ability of the subject matter to undergo the process does not
> 14     make the claim "directed to" that natural ability. If that
>        were so, we would find patent-ineligible methods of, say,
> 15     producing a new compound (as directed to the individual
>        components' ability to combine to form the new compound),
> 16     treating cancer with chemotherapy (as directed to cancer
>        cells' inability to survive chemotherapy), or treating
> 17     headaches with aspirin (as directed to the human body's
>        natural response to aspirin).

18

19  *Id*. at 1048-49. Here, the inventors of the '865 patent created a new and useful

20  method of administering beta-alanine in large doses over time to achieve an unnatural

21  – but desired – result. Creative's motion for judgment on that patent should be

22  denied.

### 3.    The '610 Patent Is Not Directed To An Exception Under § 101.

23

24

25      Creative's argument that the claims of the '610 patent are invalid under § 101,

26  and its analysis of the claims under *Alice*, are unavailing because the '610 patent is

27  directed to the manufacture of a dietary supplement, which is not a law of nature or a

28

OPPOSITION TO DEFENDANT CREATIVE COMPOUNDS, LLC'S MOTION
FOR JUDGMENT ON THE PLEADINGS

1   natural phenomenon.  *See* Dkt. No. 83-1 at 11-14.  Section 101 expressly states that

2   "manufacture" is patent-eligible subject matter.  *See, e.g.*, *Chiron Corp. v. Genentech,*

3   *Inc.*, 266 F.Supp.2d 1172, 1189 (E.D. Cal. 2002) (process claim directed toward the

4   method of manufacture used to make a given product).

5          In support of its position, Creative alleges that the focus of the claims in the

6   '610 patent is beta-alanine and how it performs in the body.  *See* Dkt. No. 83-1 at 13.

7   This statement, however, is blatantly incorrect.  It relies on an inaccurate construction

8   of the "dietary supplement" limitation that, as discussed above, is disputed by the

9   parties.  The meaning of the claims needs to be decided before the Court can properly

10  decide the § 101 question.  Further, in analyzing the '610 patent, Creative states

11  "claims 1 and 10 of the '865 patent are directed to beta-alanine and how it functions in

12  the human body—a natural phenomenon performing a law of nature."  *Id*.  The

13  language of the claims shows that Creative's assertions are not true.  Claim 1 of the

14  '610 patent states:

15             Use of beta-alanine in manufacturing a human dietary
               supplement for oral consumption; supplying the beta-
16             alanine, which is not part of a dipeptide, polypeptide or
               oligopeptide, as a single ingredient in a manufacturing step
17             of the human dietary supplement or mixing the beta-alanine,
               which is not part of a dipeptide, polypeptide or oligopeptide,
18             in combination with at least one other ingredient for the
               manufacture of the human dietary supplement, whereby the
19             manufactured human dietary supplement is for oral
               consumption of the human dietary supplement in doses over
20             a period of time increases beta-alanyl histidine levels in
               muscle tissue sufficient to delay the onset of fatigue in the
21             human.

22  FAC Exh. 13 at p. 191.  The claims, therefore, are directed to the manufacture of a

23  dietary supplement.  Creative admits as much in its brief, stating that the claims of the

24  '610 patent "recite a use of beta-alanine in manufacturing a dietary supplement where

25  it is either supplied alone, or mixed with another ingredient."  Dkt. No. 83-1 at 12.

26  The manufacture of a dietary supplement containing beta-alanine is not a natural

27  phenomenon performing a law of nature.  The claims are not directed to a natural

28  phenomenon or natural law.  The method of manufacturing claims are patent-eligible

OPPOSITION TO DEFENDANT CREATIVE COMPOUNDS, LLC'S MOTION
FOR JUDGMENT ON THE PLEADINGS

1    under *Rapid Litig. Mgmt.*, 827 F.3d 1042.  Accordingly, the claims of the '610 patent

2    are not invalid under § 101.

3            Creative, after misstating that the claims are directed to ineligible subject matter

4    under § 101, then attempts to mislead the Court by stating that there is no inventive

5    concept under step two of *Alice*.  In doing so, Creative presents conclusory statements

6    and cites to six lines of the patent that Creative asserts supports that it was well-

7    known, routine activity to put natural substances into supplements to compensate for

8    reduced levels of nutrients.  Dkt. No. 83-1 at 13.  This assertion relies on Creative's

9    proposed construction of "dietary supplement," discussed above, which is in dispute

10   with NAI's proposed construction.  Construing the term dietary supplement as

11   proposed by NAI, and the other limitations in the '610 patent for which NAI has

12   provided constructions, the intrinsic evidence and scientific evidence demonstrate that

13   the claims possess an "inventive concept" and, therefore, pass the second step of the

14   *Alice* analysis.  In sum, Creative devotes 15 lines of its brief to the second step of the

15   *Alice* analysis.  *Id.* at 13, ll. 11-25.  Given the factual allegations in the FAC, the

16   attached exhibits (which the Court must deem to be true), as well as the factual

17   evidence presented by NAI in its Opposition and Motion for Partial Reconsideration

18   in the *Allmax* case, Creative's conclusory statements fail to establish invalidity by

19   clear and convincing evidence.  As explained above in relation to the '865 patent,

20   determining what was well known, routine and conventional at the time of the

21   invention is a complicated factual issue, which requires scientific evidence for the

22   Court to perform a proper two step analysis under *Alice*.  Creative's motion is devoid

23   of any actual scientific testimony or studies to support the notion that the '610 patent

24   does not have an inventive concept. On this record, the motion should be denied.

25   / / /

26   / / /

27   / / /

28   / / /

OPPOSITION TO DEFENDANT CREATIVE COMPOUNDS, LLC'S MOTION
FOR JUDGMENT ON THE PLEADINGS

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, Creative's motion for judgment on the pleadings should be denied.

Dated:    August 14, 2017          **WILSON TURNER KOSMO LLP**

By:    <u>s/ Frederick W. Kosmo, Jr.</u>
FREDERICK W. KOSMO, JR.
HUBERT KIM

Attorneys for Plaintiff and Counter-
Defendant NATURAL ALTERNATIVES
INTERNATIONAL, INC.

OPPOSITION TO DEFENDANT CREATIVE COMPOUNDS, LLC'S MOTION
FOR JUDGMENT ON THE PLEADINGS