John K. Buche (SBN 233767)
BUCHE & ASSOCIATES, P.C.
875 Prospect, Suite 305
La Jolla, California 92037
Telephone: 858.459.9111
Facsimile: 858.459.9120
jbuche@buchelaw.com

Kevin J. O'Shea (*pro hac vice*)
OSHEA LAW LLC
4450 North Kildare Avenue
Chicago, IL  60630
Telephone:  (573) 388-2296 Phone
koshea@oshealawllc.com

Attorneys for Creative Compounds, LLC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATURAL ALTERNATIVES INTERNATIONAL, INC., | Case No.:  3:16-cv-02146-H-AGS |
| Plaintiff, | **REPLY IN SUPPORT OF DEFENDANT CREATIVE COMPOUND, LLC'S MOTION FOR JUDGMENT ON THE PLEADINGS** |
| v. | |
| CREATIVE COMPOUNDS, LLC, CORE SUPPLEMENTS TECHNOLOGIES, INC., HONEY BADGER LLC, MYOPHARMA, INC., and DOES 1-100, | Date:      September 5, 2017<br>Time:     10:30 a.m.<br>Ctrm:     15A (15th Floor)<br>Judge:    Honorable Marilyn L. Huff |
| Defendants. | |

i

# TABLE OF CONTENTS

Page

I.   INTRODUCTION ................................................................................. 1

II.  ARGUMENT ...................................................................................... 1

A.  The Court Should Reject NAI's Reliance On Pleadings Not Filed In This Case. ............................................................................................... 1

B.  The '596, '376 and '084 Patents Have Already Been Declared Invalid. ............ 2

C.  The Remaining Asserted Patents Are Invalid Because They Do Not Claim Patentable Subject Matter. ............................................................. 3

1.  The Discovery Recited In The '865 Patent Claims Is Not Patent Eligible. .. 3

2.  The Discovery Recited In The '610 Patent Claims Is Not Patent Eligible. .. 6

III. CONCLUSION ................................................................................... 8

ii

1

2

# TABLE OF AUTHORITIES

**Cases**

*Affinity Labs of Texas, LLC v. DIRECTV, LLC*, 838 F.3d 1253 (Fed. Cir. 2016)...........5, 7

*Alice Corp. Pty. v. CLS Bank Int'l*, 134 S. Ct. 2347 (2014) ............................................6, 8

*Ariosa Diagnostics, Inc. v. Sequenom, Inc.*, 788 F.3d 1371 (Fed. Cir. 2015).............5, 7, 8

*Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 133 S.Ct. 2107 (2013) .............4

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343 (Fed. Cir. 2014)........................................................................................................6

*Genetic Techs. Ltd. v. Merial L.L.C.*, 818 F.3d 1369 (Fed. Cir. 2016) ........................4, 7

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66 (2012)......................5

*Rapid Litig. Mgmt. Ltd. v. CellzDirect, Inc.*, 827 F.d 1042 (Fed.. Cir. 2016)....................7

**Statutes**

35 U.S.C. § 101 ...............................................................................................................6, 8

## I.   INTRODUCTION

The asserted claims begin and end with a natural phenomenon, and therefore are invalid pursuant to Section 101.  Plaintiff cannot avoid this conclusion by showing that the claims describe what may be a scientifically interesting, or even significant, discovery.  Patents protect inventions, not discoveries, and the asserted claims disclose— at most—the inventor's discovery of a natural phenomenon.   The addition of conventional limitations such as well-known manufacturing steps does not transform the natural phenomenon into patent-eligible subject matter.   The Court applied these well-settled legal tenets in the *Allmax* Decision and concluded, as a matter of law, that the '084, '376, and '596 patents are invalid pursuant to Section 101.   The remaining two patents asserted in this case, the '865 and '610 patents, are related to the three invalid patents and disclose nothing in addition to what is in the invalid patents that would support a different conclusion.   Accordingly, the remaining two patents are also invalid pursuant to Section 101.

## II.   ARGUMENT

### A.   The Court Should Reject NAI's Reliance On Pleadings Not Filed In This Case.

Throughout its Opposition, NAI incorporates by reference, and relies upon, pleadings that it filed in the *Allmax* case but not in this case, in a transparent attempt to avoid the page limit.   However, NAI's arguments in its present Opposition are inconsistent with its arguments in the *Allmax* case.   For example, in *Allmax* NAI argued that the claim term "dietary supplement" should be construed as "an addition to the human diet, ingested as a pill, capsule, powder or liquid, which is not a natural or conventional food, meat or food flavoring or extract, or pharmaceutical product which effectively increases the function of a tissue when administered to the human over a period of time."  *See Allmax*, Case No. 16-cv-1764-H-AGS, Dkt. Nos. 56 (NAI Oppn.) at 21, and 67 (NAI Mtn. to Reconsider) at 17.   Despite its reliance on these specific

1

pleadings in its present Opposition, NAI argues in this case that "dietary supplement" should be construed as "an addition to the human diet, which is not a natural or conventional food, which effectively increases athletic performance and is manufactured to be used over a period of time."  (Dkt. No. 85, NAI Oppn., at 13-14; Dkt. No. 85-2, Exh. 1, NAI Proposed Claim Constr. Claim Charts.)  NAI makes no attempt to reconcile these diverse arguments, leaving Creative and the Court unable to determine which argument NAI is relying upon.  Therefore, the Court should reject NAI's incorporation or reliance on any pleading that NAI did not file in this case.[1]

**B.     The '596, '376 and '084 Patents Have Already Been Declared Invalid.**

The Court previously invalidated the '596 patent, the '376 patent and the '084 patent as being directed to patent ineligible subject matter.  *Allmax* Decision at 16, 19 and 21.  Accordingly, Creative requests that its motion be granted with respect to the '596, '376 and '084 patents pursuant to the *Allmax* Decision.

NAI's relies solely on its pleadings in the *Allmax* case in its Opposition.  (Dkt. No. 85, Opposition, at 12-13.)  As noted above, Creative objects to this attempt to avoid the page limits.  Nevertheless, to the extent that the Court allows NAI to rely on pleadings not filed in this case, Creative adopts and incorporates herein by reference the *Allmax* Defendants' relevant pleadings.  *See Allmax* Dkt. Nos. 43, 44, 59, 62, and 70.

---

[1] If the Court allows NAI to rely on its *Allmax* pleadings, Creative adopts and incorporates herein by reference the relevant pleadings filed by the *Allmax* Defendants.  *See Allmax*, Case No. 16-cv-1764-H-AGS, Dkt. Nos. 43 (Mtn for Judgment on the Pleadings), 44 (Mtn to Dismiss), 59 (Reply in Supp of Mtn to Dismiss), 62 (Reply in Supp of Mtn for Judgment on the Pleadings), and 70 (Oppn to Mtn for Reconsideration).

**C.    The Remaining Asserted Patents Are Invalid Because They Do Not Claim Patentable Subject Matter.**

**1.    The Discovery Recited In The '865 Patent Claims Is Not Patent Eligible.**

The Court previously rejected NAI's arguments regarding the method claims in its asserted patents, and the Court should do so again.  NAI argues that the asserted '865 patent claims require providing beta-alanine in "massive amounts" over "many weeks." (Dkt. No. 85 at 14.)   These are the same arguments that NAI made in *Allmax* in connection with the method claims of the '596 patent.  *Allmax* Decision at 20-21.  The Court rejected the arguments in connection with the '596 patent because "[t]here is nothing in the claim language requiring that the carnosine concentration achieved by the [claimed] method be at unnatural levels."  *Id.* at 21.  The same is true for the method claims of the '865 patent.

Claim 1 of the '865 patent recites a method of providing beta-alanine to a human to increase the concentration of beta-alanyl histidine dipeptide in tissue.  '865 patent at 22:56-23:5.  There are no claim limitations requiring the administration of beta-alanine in "massive amounts" over "many weeks"  This is true even if the Court were to accept NAI's proposed claim constructions for the terms "increasing anaerobic activity," "effective to increase beta-alanylhistidine dipeptide synthesis in the tissue," and "dietary supplement."  (Dkt. No. 85 at 13.[2])  None of these proposed constructions would add the concept of administering beta-alanine in "massive amounts" over "many weeks" to the '865 patent claims.  (*Id.*)

---

[2] "Dietary supplement" is the only one of these terms that requires construction.  (Dkt. No. 85-2, Exh. 2, Creative's Proposed Claim Constr.)  The others should be accorded their respective plain and ordinary meanings.

3

1    However, NAI ignores its own proposed claim constructions and relies instead on a

2    new declaration filed in connection with its Motion to Reconsider in *Allmax*.  (*Id.* at 14-

3    15.)  As discussed above, the Court should reject NAI's attempt to circumvent the page

4    limits by relying on pleadings not filed in this case.  Moreover, this new declaration

5    relates only to the three patents that the Court previously invalidated.  It does not identify

6    a single claim limitation in the '865 patent that includes the requirement of administering

7    beta-alanine in "massive amounts" over "many weeks."  (*Id.*; *Allmax* Dkt. No. 67-5.)

8    Thus, NAI has no evidence to support its argument that the Court should read into the

9    '865 patent claims a non-existent requirement to administer beta-alanine in "massive

10   amounts" over "many weeks."

11   Despite its carefully crafted wording, the new *Allmax* declaration that NAI relies

12   upon speaks in terms of the inventor's discovery of a natural phenomenon, rather than

13   any invention.  The declarant acknowledges that beta-alanine existed long before the

14   asserted patents were filed but argues that it was only after the inventor's discovery that

15   the use of beta-alanine in a dietary supplement started to become acknowledged.  (Dkt.

16   No. 85 at 14; *Allmax* Dkt. No. 67-5, ¶ 6.)  The Supreme Court has been clear that

17   "[g]roundbreaking, innovative, or even brilliant discovery does not by itself satisfy the §

18   101 inquiry."  *Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 133 S.Ct. 2107,

19   2117 (2013); *see also Allmax* Decision at 21 (recognizing that providing a new and useful

20   method of increasing the amount of carnosine in muscles, as NAI argued in connection

21   with the method claims of the '596 patent, "is insufficient to render the claims at issue

22   patent eligible.").  A method of providing beta-alanine to a human to increase the

23   concentration of beta-alanyl histidine dipeptide in tissue, as recited in the '865 patent

24   claims, may be useful but it is not a patent eligible invention.  *Allmax* Decision at 21

25   (*citing Genetic Techs. Ltd. v. Merial L.L.C.*, 818 F.3d 1369, 1380 (Fed. Cir. 2016)

26   ("Claim 1 stands rejected under § 101 as ineligible for claiming unpatentable subject

27

28                                                    4

matter, not for lack of utility.  The method claims of *Mayo* and *Ariosa* were apparently also useful, and also invalid.")).

Turning to step two of the *Alice* inquiry, NAI cannot transform a patent-ineligible discovery of a law of nature into a patentable invention by claiming that it has created "nonnaturally occurring" levels of beta alanine.  The Supreme Court rejected the idea of patenting a course of treatment based on a discovered natural law in *Mayo*.  Nothing in the asserted '865 patent claims identifies an "inventive concept" that would transform the claimed natural phenomenon into patent eligible subject matter.  *See Affinity Labs of Texas, LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1258 (Fed. Cir. 2016).  Instead, the claim limitations in addition to beta-alanine merely recite placing beta-alanine into a dietary supplement and administering the dietary supplement to a human.  '865 patent at 22:56-67, 23:1-5.  The inventors acknowledged in the '865 patent that placing a natural substance into a dietary supplement for human consumption is a well-known, conventional activity.  *See Id.* at 1:41-47 ("Natural food supplements are typically designed to compensate for reduced levels of nutrients in the modern human and animal diet.  In particular, useful supplements increase the function of tissues when consumed."); *see also Allmax* Deciation at 20 ("The Court agrees with Defendants that the language in claim 1 [of the '596 method patent] does nothing more than simply state the law of nature and add the words apply it to human tissue…. This is insufficient to render the claim patent-eligible." (*citing Ariosa Diagnostics, Inc. v. Sequenom, Inc.*, 788 F.3d 1371, 1377 (Fed. Cir. 2015) and *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 77 (2012))).

Simply put, placing a natural substance into a dietary supplement (a conventional activity), providing the supplement to a human to administer beta-alanine (a natural phenomenon), to invoke a known di-peptide synthesis of beta-alanyl-L-histidine in the tissue (a law of nature) is insufficient to render the '865 patent claims patent-eligible. *Ariosa*, 788 F.3d at 1377 (holding that utilizing routine and conventional methods for

amplifying and detecting cffDNA, a natural phenomenon, was insufficient to render the claims at issue patent eligible); *Alice Corp. Pty. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2357-58 (2014) (holding that the introduction of a general-purpose computer to implement an abstract idea was insufficient to render the claims at issue patent eligible); *Mayo*, 566 U.S. at 78-82 (2012) (finding the steps of administering a drug and then reconsidering the dosage in light of a natural law insufficient to render the claims at issue patent eligible). Therefore, pursuant to the *Alice* inquiry, the asserted '865 patent claims are directed to patent-ineligible subject matter and the '865 patent is invalid under 35 U.S.C. § 101.[3]

### 2.     The Discovery Recited In The '610 Patent Claims Is Not Patent Eligible.

Claims 1 and 10 of the '610 patent, though unclear on their face, appear to recite the use of beta-alanine in manufacturing a dietary supplement in which it is either supplied alone, or mixed with another ingredient, and available for oral consumption by a human, in doses over time, to increase beta-alanyl histidine levels in muscle tissue sufficient to delay the onset of fatigue.  Thus, the "whereby" clause in the '610 patent claims focuses them on a law of nature, namely that ingesting beta-alanine, a natural substance, "over a period of time increases beta-alanyl histidine levels in muscle tissue sufficient to delay the onset of fatigue in [a] human."  *See Allmax* Decision at 20 (holding that the method claims of the '596 patent are "directed to a law of nature, specifically the principle that ingesting beta-alanine, a natural substance, will increase carnosine concentration in tissue and thereby aid in regulating the hydronium ion concentration in the tissue," as set forth in the common specifications of the asserted patents (footnote

---

[3] NAI did not address the asserted dependent claims separately from representative claim 1 of the '865 patent.  Thus, the parties are in agreement that, as Creative set forth in its opening brief, the Court may use a representative claim to determine patent eligibility under Section 101.  *See Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014).

omitted) (*citing*, *inter alia*, *Ariosa*, 788 F.3d at 1376 ("The method therefore begins and ends with a natural phenomenon."))).  Thus, the asserted '610 patent claims are directed to excluded subject matter, thereby satisfying step one of the *Alice* inquiry.[4]  *Ariosa* at 1376; *Mayo* at 77; *Genetic Techs.* at 1374-76.

Turning to step two of the *Alice* inquiry, the additional elements of claims 1 and 10 of the '610 patent do not identify an "inventive concept" that would transform the claimed natural phenomenon into patent eligible subject matter.  *Affinity Labs*, 838 F.3d at 1258.  The discovery recited in the '610 patent claims is not rendered patent-eligible merely because the claims are "method of manufacture" claims, as NAI asserts.  The claims recite conventional manufacturing techniques to produce a conventional product that includes a naturally-occurring substance, with the additional requirement that the manufactured product "is for oral consumption of the human dietary supplement in doses over a period of time increases [sic] beta-alanyl histidine levels in muscle tissue sufficient to delay the onset of fatigue in [a] human."  As noted above and in the *Allmax* Decision, this is not patentable subject matter, and the addition of conventional manufacturing techniques does not transform it into patent-eligible subject matter.  *Cf. Rapid Litig. Mgmt. Ltd. v. CellzDirect, Inc.*, 827 F.d 1042 (Fed.. Cir. 2016).

In *Rapid Litig.*, the claims were directed to a "new and useful laboratory technique for preserving hepatocytes."  *Id.* at 1048.  The inventors had "employed their natural discovery to create a new and improved way of preserving hepatocyte cells for later use."  *Id.*  There was nothing in the specification of the patent at issue in *Rapid Litig.* that indicated the claimed methods were conventional; to the contrary, "[c]onventional preparation methods were unable to create a frozen hepatocyte preparation that could be

---

[4] NAI argues that Creative's position relies on its proposed construction of the term "dietary supplement."  (Dkt. No. 85 at 20.)  However, Creative did not propose a construction of "dietary supplement" in its opening brief, and did not serve its Preliminary Proposed Constructions until after the opening brief was filed.

stored for a long duration and then, upon thawing, result in a pool of hepatocytes….” *Id.* at 1049. Unlike the additional limitations in the claims at issue in *Rapid Litig.*, the additional limitations in the '610 patent claims merely recite "supplying" beta-alanine as a single ingredient or "mixing" it with another ingredient. '610 patent, 22:60-23:1-5. The inventors acknowledged in the '610 patent that using one or more natural substances in a dietary supplement for human consumption is a well-known, conventional activity. *Id.* at 1:41-47 (referring to compensating for reduced levels of nutrients (plural)). The "one other ingredient" is not even identified and therefore could be a common excipient (*e.g.*, fillers, bulking agents, diluents, etc.) Finally, it is self-evident that ingredients in dietary supplements can be dry and given in doses over a period of time. In sum, making a dietary supplement with a natural substance, either alone or together with other conventional ingredients, is insufficient to render claim 1 patent eligible. *Ariosa*, 788 F.3d at 1377; *Alice*, 134 S. Ct. at 2357-58; *Mayo*, 566 U.S. at 78-82.

In light of the entire *Alice* inquiry, the '610 patent claims are directed to patent-ineligible subject matter and the '610 patent is invalid under 35 U.S.C. § 101.

## III. CONCLUSION

For the foregoing reasons, the '084, '596, '376, '865, and '610 patents should be declared invalid pursuant to 35 U.S.C. § 101 and Creative's motion should be granted.

Dated: August 21, 2017

Respectfully submitted,

By: /s/John K. Buche
John K. Buche (SBN 239477)
BUCHE & ASSOCIATES, P.C.
875 Prospect, Suite 305
La Jolla, California 92037
Telephone: 858.459.9111
Facsimile: 858.459.9120
jbuche@buchelaw.com

8

3:16-cv-02146-H-AGS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Kevin J. O'Shea (*pro hac vice*)
OSHEA LAW LLC
4450 North Kildare Avenue
Chicago, IL  60630
Telephone:  (573) 388-2296 Phone
koshea@oshealawllc.com

Attorneys    for    Defendant    Creative
Compounds, LLC

9

1

## **CERTIFICATE OF SERVICE**

2

3

4

5

    I hereby certify that on August 21, 2017, the foregoing document described as **REPLY IN SUPPORT OF DEFENDANT CREATIVE COMPOUND, LLC'S MOTION FOR JUDGMENT ON THE PLEADINGS** was filed with the Clerk of the Court using CM/ECF which will send notification of such filing to the attorneys of record in this case.

6

/s/John K. Buche
John K. Buche

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

3:16-cv-02146-H-AGS